STANDARD OIL COMPANY OF
CALIFORNIA, et al., Appellants,

v.

ARIZONA, California, Florida, Oregon,
and Washington, Appellees.

No. 83–5517.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 7, 1983.

Decided July 24, 1984.

**1022**

Richard MacLaury, San Francisco, Cal., Adlai S. Hardin, Jr., New York City, for appellants.

Patricia A. Cutler, Deputy Atty. Gen., San Francisco, Cal., for appellees.

Before SKOPIL and PREGERSON, Circuit Judges, and MARQUEZ,* District Judge.

PREGERSON, Circuit Judge:

In this antitrust suit, five states allege that major oil companies have conspired to fix the prices of refined petroleum products. The issue to be resolved on this interlocutory appeal is whether the states are entitled to a jury trial of legal claims.[1] The district court held that the states are entitled to a jury. We affirm.

## I. FACTS

Arizona, California, Florida, Oregon, and Washington brought separate actions charging major oil companies with conspiring to fix prices of refined petroleum products. The states brought suit in their proprietary capacities, as class representatives, and as parens patriae. The actions were transferred to the Central District of California for coordinated pretrial proceedings under 28 U.S.C. § 1407 (1982).

The states demanded a jury trial of the legal issues in their antitrust actions. The oil companies moved to strike the jury demand, arguing that the Seventh Amendment does not guarantee the right of jury trial to a state government. The district court held that the states are entitled to a jury trial of legal issues and certified the issue for immediate appeal under 28 U.S.C. § 1292(b) (1982). Thirty-four states collaborated on an amicus curiae brief in support of the plaintiff states. The City of Long Beach, plaintiff in another lawsuit which is part of the multi-district proceedings, obtained leave to appear as amicus curiae to protect its own right to jury trial.[2]

The sole question presented on this appeal is whether states have the right to a jury trial of legal issues in antitrust actions in federal court. To answer this question, we must determine whether states have the right to a jury trial under federal statute or the Seventh Amendment. *See Lehman v. Nakshian,* 453 U.S. 156, 165 n. 13, 101 S.Ct. 2698, 2704 n. 13, 69 L.Ed.2d 548 (1981) (there is no general right to jury trial in federal courts; the right must derive from statute or the Seventh Amendment).

## II. STANDARD OF REVIEW

Whether states are entitled to a jury trial of legal antitrust issues in federal

---

* Hon. Alfred C. Marquez, United States District Judge, District of Arizona, sitting by designation.

1. We do not use the word "legal" as a shorthand expression for "questions of law," in contrast to "questions of fact." Questions of law are, of course, decided by a court, not a jury. We use the word "legal" as a shorthand expression for issues cognizable at law that are tried by a jury, in contrast to issues cognizable in equity or in admiralty that are tried by a court.

2. The City of Long Beach has demanded a jury trial in its separate lawsuit against the oil companies for price-fixing of crude oil. The issue of a governmental entity's entitlement to jury trial was raised first in the Long Beach case, and the district court held that Long Beach was entitled

to a jury. The district court refused to certify the issue for immediate appeal. A year later, the oil companies moved to strike the jury demands in the gasoline marketing cases brought by Arizona, California, Oregon, Washington, and Florida. The district court at that time held that the plaintiff states were entitled to a jury and certified the issue for immediate appeal. The district court felt that the appeal in the states' case might disturb its earlier ruling in favor of Long Beach because this court possibly could hold that no governmental entity is entitled to a jury trial. The oil companies have elected not to distinguish Long Beach from the states and contend that neither a state nor a city has the right to a jury trial. Long Beach argues that even if the states are not entitled to a jury trial, the holding should not extend to nonsovereign political subdivisions.

court is purely a question of law, requiring us to construe federal statutes and the Seventh Amendment. Therefore, the district court's determination is freely reviewable. *Hoptowit v. Ray*, 682 F.2d 1237, 1245 (9th Cir.1982); *Burlington Northern, Inc. v. Weyerhaeuser Co.*, 719 F.2d 304, 307 (9th Cir.1983).

Our review is guided by the axiom that the right of jury trial in civil cases is a basic, fundamental right, and that "any seeming curtailment of the right to jury trial should be scrutinized with the utmost care." *In re U.S. Financial Securities Litigation*, 609 F.2d 411, 421 (9th Cir.1979), *cert. denied*, 446 U.S. 929, 100 S.Ct. 1866, 64 L.Ed.2d 281 (1980) (quoting *Dimick v. Schiedt*, 293 U.S. 474, 486, 55 S.Ct. 296, 301, 79 L.Ed. 603 (1935)).

## III. STATES' RIGHT TO JURY TRIAL UNDER FEDERAL ANTITRUST LAWS

The right to jury trial in civil cases may be provided by federal statute. Congress may provide for the right to jury trial in instances where the Seventh Amendment would not otherwise guarantee such a right. *See, e.g.*, 28 U.S.C. § 1346(a)(1) (providing for jury trial against the United States in tax refund cases); 28 U.S.C. § 1873 (providing for jury trial in admiralty actions involving shipping on Great Lakes). Because we must, if at all possible, resolve cases on statutory grounds before reaching constitutional questions, *see Escambia County, Florida v. McMillan*, —— U.S. ——, ——, 104 S.Ct. 1577, 1579, 80 L.Ed.2d 36 (1984) (per curiam), we consider first

whether Congress has expressly provided the right to jury trial under the antitrust laws.[3] If so, the right clearly extends to states because it is well established that states are "persons" capable of bringing treble damage actions under the Sherman and Clayton Acts. *See Georgia v. Evans*, 316 U.S. 159, 162, 62 S.Ct. 972, 974, 86 L.Ed. 1346 (1942) ("We can perceive no reason for believing that Congress wanted to deprive a State, as purchaser of commodities shipped in interstate commerce, of the civil remedy of treble damages which is available to other purchasers who suffer through violation of the [antitrust laws].")

As a "person" a state is entitled to the same treatment as an individual or corporation. *Cf. Pfizer, Inc. v. Government of India*, 434 U.S. 308, 318–19, 98 S.Ct. 584, 590–91, 54 L.Ed.2d 563 (1978) (India could sue for treble damages "to same extent as any other person injured by an antitrust violation ....."). Thus, if the antitrust laws secure the right to a jury trial, a state's right to a jury trial would be clear.[4]

Unfortunately, the question whether Congress intended to statutorily create a right to jury trial in antitrust actions independent of the Seventh Amendment is far from clear. As we discuss below, the antitrust statutes themselves are silent on the matter, their legislative history provides no positive evidence, and Supreme Court precedent is equivocal.

### A. Legislative History

█ The Sherman and Clayton Acts[5] are silent on the subject of jury trial. This

---

**3.** *See Lorillard v. Pons*, 434 U.S. 575, 577, 98 S.Ct. 866, 868, 55 L.Ed.2d 40 (1978) (Supreme Court found it unnecessary to reach Seventh Amendment issue because Court found jury trial provided implicitly in the statute. *Cf. Curtis v. Loether*, 415 U.S. 189, 192, 94 S.Ct. 1005, 1007, 39 L.Ed.2d 260 (1974) (Court did not give "extended consideration" to difficult statutory interpretation questions because it was clear Seventh Amendment guaranteed jury trial in Title VIII cases).

**4.** *See Zenith Radio Corp. v. Matsushita Elec. Indus. Co., Ltd.*, 478 F.Supp. 889, 901 (E.D.Pa. 1979) (footnote omitted), *rev'd on other grounds*

*sub nom. In re Japanese Elec. Prod. Antitrust Litig.*, 631 F.2d 1069 (3d Cir.1980):

> Thus, if in enacting the antitrust laws Congress has granted the right to trial by jury ... any such limitation on the scope of the Seventh Amendment would be irrelevant. But if the antitrust laws do not themselves guarantee trial by jury on demand, we would have to decide the constitutional issue.

**5.** The Sherman Act is codified at 15 U.S.C. §§ 1–7 (1982). The Clayton Act is codified at 15 U.S.C. §§ 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22–27, and at 29 U.S.C. §§ 52 and 53 (1982).

silence, however, would not preclude a finding that the statutory scheme implicitly provides a right to jury trial independently of the Seventh Amendment. In a recent case, the Supreme Court found an implicit right to jury trial where the statute in question was silent on the subject. *Lorillard v. Pons,* 434 U.S. 575, 583, 98 S.Ct. 866, 871, 55 L.Ed.2d 40 (1978).[6] In *Lorillard,* the Court noted that Congress incorporated Fair Labor Standards Act (FLSA) (29 U.S.C. §§ 201–219) procedures into the Age Discrimination in Employment Act (ADEA) (29 U.S.C. §§ 621–634) knowing that the right to jury trial under the FLSA was well-established by the courts. The Court interpreted Congress' express incorporation of FLSA procedures as an indication of Congress' intent to guarantee a right to jury trial under the ADEA. *Lorillard,* 434 U.S. at 584–85, 98 S.Ct. at 872.

A district court and a circuit court have conducted *Lorillard* examinations of the antitrust laws, seeking signs of an implicit right to jury trial. The district court found evidence in the legislative history "insufficient to allow an extension of the reasoning of *Lorillard* to the antitrust statutes." *Zenith Radio Corp. v. Matsushita Electric Industrial Co.,* 478 F.Supp. 889, 902 (E.D. Pa.1979). The Third Circuit reversed the district court on other grounds, but affirmed the district court's conclusion that there is no *Lorillard*-type implicit right of jury trial in the antitrust laws. *In re Japanese Electronic Products Antitrust Litigation,* 631 F.2d 1069, 1075–76 (3d Cir. 1980).

References in the legislative histories of the Sherman and Clayton Acts show that the enacting legislators assumed that treble damage claims would be tried to juries. But the basis for the assumption seems to be the Seventh Amendment, not any language or implicit guarantee in the statutes. The debates on the Sherman Act duly note that the Seventh Amendment would pro-

vide for jury trials in treble damage actions, *see* 21 Cong.Rec. 2643 (1890) (remarks of Senator Gray), *cited in In re Japanese Electronic Products Antitrust Litigation,* 631 F.2d at 1076. Similarly, in the legislative history of the Clayton Act, there are various remarks showing that Congressmen expected that the constitutional right to jury trial would apply in treble damage actions. For example, certain Congressmen were concerned that the Seventh Amendment would be violated by a provision making findings of fact in government-prosecuted suits conclusive in subsequent private actions. *See* 51 Cong. Rec. 9491 (1914) (remarks of Reps. Green and Scott) *quoted in Zenith Radio Corp.,* 478 F.Supp. at 903–04 n. 23.

In short, the legislative history shows that Congress expected that a jury trial would be available in treble damage actions under the antitrust laws. The legislative history, however, does not show that Congress intended to guarantee jury trial by virtue of the antitrust laws themselves "where the Seventh Amendment would not." *In re Japanese Electronic Products Antitrust Litigation,* 631 F.2d at 1076.

## B. Supreme Court Pronouncements

The Supreme Court has never determined the precise source of the right to jury trials in antitrust cases. Nonetheless, troublesome dicta in one line of cases does suggest that a right to jury trial is secured directly by the antitrust laws. The problem started in *Fleitmann v. Welsbach Street Lighting Co.,* 240 U.S. 27, 29, 36 S.Ct. 233, 234, 60 L.Ed. 505 (1916) (Holmes, J.), where the Court dismissed a treble damage action brought as a derivative suit because allowing the suit to proceed in equity would deprive the antitrust defendant of the right to jury trial. "[W]hen a penalty of triple damages is sought to be inflicted, the statute should not be read as

---

**6.** We note that *Lorillard* is a departure from the Supreme Court's past practice of turning directly to the Seventh Amendment when a federal statute is silent on the subject of jury trial. *See Zenith Radio Corp. v. Matsushita Elec. Ind. Co.,*

478 F.Supp. at 903. For an example of the Supreme Court's relying on the Seventh Amendment in the face of statutory silence, *see Curtis v. Loether,* 415 U.S. 189, 192, 94 S.Ct. 1005, 1007, 39 L.Ed.2d 260 (1974).

attempting to authorize liability to be afforded otherwise than through the verdict of a jury in a court of common law. On the contrary, it plainly provides the latter remedy and it provides no other." 240 U.S. at 29, 36 S.Ct. at 234 (citation omitted).

At first reading, Justice Holmes' language in *Fleitmann* seems to be saying that the antitrust laws *provide* trial by jury in a court of common law and no other remedy. An equally plausible interpretation of the language, however, is that the antitrust laws do not violate the Seventh Amendment by authorizing trial without a jury where the constitution guarantees one.

> Rather than a declaration that the right to jury trial in antitrust cases is statutorily based, the Court's dictum appears to be a statement that it does not read the antitrust laws as interfering in any way with the Seventh Amendment's protection of the right to jury trial of damage and penalty issues.

Jorde, *The Seventh Amendment Right to Jury Trial of Antitrust Issues*, 69 Cal.L. Rev. 1, 18 n. 86 (1981). At best, Justice Holmes' language is equivocal on the source of the right to jury trial.

Later references to *Fleitmann* are also equivocal. Citing *Fleitmann*, the Court has observed, "[T]he right to trial by jury applies to treble damage suits under the antitrust laws, and is, in fact, an essential part of the congressional plan for making competition rather than monopoly the rule of trade...." *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 504, 79 S.Ct. 948, 953, 3 L.Ed.2d 988 (1959). The quote in *Beacon Theatres* sounds as if the Court believes Congress intended to guarantee the right to jury trial under the antitrust laws. But even if the right of jury trial is essential to the congressional antimonopoly plan, *Beacon Theatres* does not directly hold that the right is created by statute as opposed to being derived from the constitu-

tion itself. The fact that jury trial is an essential part of Congress' enforcement plan does not rule out the idea that Congress assumed that a jury trial would be available under the constitution, and thus did not provide the right by statute.

Adding still more confusion, the Supreme Court has referred to *Fleitmann* as resting on the antitrust laws. "Although the [*Fleitmann*] decision had obvious Seventh Amendment overtones, its ultimate rationale was grounded in the antitrust laws." *Ross v. Bernhard*, 396 U.S. 531, 536, 90 S.Ct. 733, 737, 24 L.Ed.2d 729 (1970) (footnote omitted). Although at first reading, *Ross v. Bernhard* sounds as if the Court is saying that *Fleitmann* interpreted the antitrust laws as providing for jury trial, there is another explanation. *Fleitmann's* rationale is grounded on the antitrust laws because the opinion construes them so as not to detract from an antitrust defendant's constitutional right to jury trial.

In short, despite occasional tantalizing language, we conclude that the Supreme Court has never resolved the issue whether the antitrust laws grant a right to jury trial independent of the Seventh Amendment. Based on our review of the legislative history and Supreme Court precedent, we agree with the Third Circuit that no right to jury trial flows directly from the antitrust laws. *See In re Japanese Electronic Products Antitrust Litigation*, 631 F.2d at 1076–77. Congress and the Supreme Court, we believe, correctly assumed that the constitution would provide for jury trials in treble damage actions. Neither Congress nor the Court has ever faced the issue whether the antitrust laws alone provide for a jury trial. We therefore cannot hold that plaintiff states are entitled to a jury trial under the antitrust laws, and thus we must decide whether a right to jury trial is secured to the states by the Seventh Amendment.[7]

---

7. Even if the right to jury trial is guaranteed directly by the antitrust laws, the parameters of that right would be the same as the right guaranteed by the Seventh Amendment. Congress' concern that certain provisions could deny a right to jury trial in situations where the Seventh Amendment would guarantee a jury is evident from the legislative history. *See* 51 Cong. Rec. 9491 (1914) (remarks of Reps. Green and Scott), *quoted in Zenith Radio Corp.*, 478

## IV. STATES' RIGHT TO JURY TRIAL UNDER THE SEVENTH AMENDMENT

The Seventh Amendment to the United States Constitution provides:

In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by jury, shall be otherwise reexamined in any Court of the United States, than according to the rules of the common law.

In another case that called upon us to interpret the Seventh Amendment, we observed, "[t]he surface simplicity of this provision is beguiling for the exact scope of its application was unclear even when it was first adopted." *In re U.S. Financial Securities Litigation*, 609 F.2d 411, 421 (9th Cir.1979), *cert. denied*, 446 U.S. 929, 100 S.Ct. 1866, 64 L.Ed.2d 281 (1980). In the discussion that follows we must delve beneath the surface simplicity of the Seventh Amendment in order to ascertain whether the states are guaranteed the right to jury trial.

### A. States are Entitled to a Jury Trial by Historical Analogy.

Courts have long held that the application of the Seventh Amendment is determined by reference to history. "In order to ascertain the scope and meaning of the Seventh Amendment, resort must be had to the appropriate rules of the common law established at the time of the adoption of that constitutional provision in 1791." *Dimick v. Schiedt*, 293 U.S. 474, 476, 55 S.Ct. 296, 297, 79 L.Ed. 603 (1935) (citations omitted). The "common law" referred to in the Seventh Amendment is not the common law of the colonies or states, but common law of England. *See United States v. Wonson*, 28 F.Cas. 745, 750 (C.C. D.Mass.1812) (Story, J.); *Baltimore & Carolina Line, Inc. v. Redman*, 295 U.S. 654, 657, 55 S.Ct. 890, 891, 79 L.Ed. 1636 (1935).

Use of an historical analysis does not mean that juries are available only in suits "which the common law recognized among its old and settled proceedings...." *Parsons v. Bedford, Breedlove & Robeson*, 28 U.S. (3 Pet.) 433, 447, 7 L.Ed. 732 (1830). Rather, an historical analysis permits reasoning by analogy. There is a right to jury trial in suits analogous to those "in which legal rights were to be ascertained and determined, in contradistinction to those where equitable rights alone were recognized, and equitable remedies were administered...." *Id.* Thus, the first question to be addressed concerning the scope of the Seventh Amendment is whether the issue to be tried is analogous to a legal (as opposed to an equitable or admiralty) issue that would have been tried to a jury in England in 1791.

■ Characterizing the issue to be tried as legal or equitable is only a starting point. Even issues "legal" in nature were sometimes tried by the judge, not by the jury, at common law. *See* Jorde, *The Seventh Amendment Right to Jury Trial of Antitrust Issues*, 69 Calif.L.Rev. 1, 9 (1981). "Legal" issues relating to jurisdiction, venue, and forum nonconvenience, witness competency, and civil contempt were tried by a judge at common law. *See* 5 *Moore's Federal Practice* ¶ 38.38[4] at 339–40 (2d ed. 1982). An inquiry concerning the right to jury trial in legal actions in England in 1791 could also turn on matters such as sovereign immunity which are extraneous to the legal-equitable distinction.

---

F.Supp. at 903–04 n. 23. But there is no evidence whatsoever in the legislative history that Congress desired to provide for jury trial in cases outside the scope of the Seventh Amendment. Thus, any statutory right would be commensurate with, not greater than, the Seventh Amendment.

[E]ven if a statutory right to jury trial were to be inferred from the [antitrust laws'] meager legislative record, the only source of content for that right would appear to be the congressional references to the Seventh Amendment itself. Thus ... the process of determining the scope of the statutory right to jury trial in antitrust cases would not differ from pure constitutional analysis. It is necessary, therefore, to decide the constitutional question. Jorde, *The Seventh Amendment Right to Jury Trial of Antitrust Issues*, 69 Calif.L.Rev. 1, 19–20 (1981) (footnote omitted).

*Id.* Thus, two inquiries are required for a proper application of historical analysis: are the issues to be tried legal and, if so, are the issues the sort that would have been tried to a jury in England in 1791.

■ Here we must decide first whether the issues involved are legal in nature and second, if actions brought by government entities were tried to juries in 1791. As applied to this case, the first inquiry is easy. Antitrust suits for treble damages are clearly legal actions. *See In re Japanese Electronic Products Antitrust Litigation,* 631 F.2d 1069, 1079 (3d Cir.1980) (antitrust suits for treble damages are plainly legal; remedy of compensatory and punitive damages traditionally associated with courts of law). Indeed, punitive damage awards such as the treble damages available under the antitrust laws were historically available only at common law, not in equity. *See Decorative Stone Co. v. Building Trades Council,* 23 F.2d 426, 427–28 (2d Cir.), *cert. denied,* 277 U.S. 594, 48 S.Ct. 530, 72 L.Ed. 1005 (1928).

The second inquiry is harder. The only circuit court decision holding that a state is entitled to a jury trial seemingly reached only the first question of the two part inquiry. There, the court simply looked to the issue involved, determined it was a legal issue, but did not consider the significance, if any, of the fact that a state was making a jury demand. *See United States v. New Mexico,* 642 F.2d 397, 399–400 (10th Cir.1981). In that case, the United States sued New Mexico because the state had assessed and collected an allegedly unauthorized tax against a private contractor, working for the United States, who ultimately passed the tax on to the federal government. New Mexico requested a jury trial, and the trial court denied the request. On appeal, the Tenth Circuit held that the suit was in effect an action for a tax refund and found that the taxpayer had an historical right to a jury trial in such an action.[8] The court then concluded that the right to jury was reciprocal and the taxing entity, New Mexico, was entitled to a jury trial as well. The court reasoned that it was anomalous for the federal government to recognize the right to jury trial in a case where the United States was the taxing entity but not in a case where the United States was the taxpayer. Thus, the Tenth Circuit concluded that New Mexico was entitled to a jury trial based solely on the nature of the issues involved. The court did not discuss the problem underscored by the appellant oil companies here, i.e., whether there is some special historical problem when a state is the party demanding the jury.

There were, of course, no states in England in 1791. Therefore, we must reason by analogy. States in our federal system are in a legal position similar to that of the English sovereign. Like the English sovereign, states are sovereign entities and cannot be sued without consent.[9] Having observed that the position of the states is

---

8. The oil companies correctly point out that the Tenth Circuit in *United States v. New Mexico* was wrong in at least one respect. The court looked at historical practice in England and early America and concluded there was an historical right to jury trial in tax refund cases. The United States Supreme Court in *Lehman v. Nakshian,* 453 U.S. 156, 161 n. 8, 101 S.Ct. 2698, 2702 n. 8, 69 L.Ed.2d 548 (1981), in a footnote observes that there was great historical reluctance to provide for jury trials against the United States in tax refund cases. The Supreme Court says that Congress "broke with precedent" by establishing a statutory right to jury trial in tax refund cases in 1954, whereas the Tenth Circuit said that the 1954 jury trial provision was a "reaffirmation" of a historical right to jury trial in tax refund cases. 642 F.2d at 401. The Tenth Circuit appears to be wrong on this point.

9. Somewhat inexplicably, the oil companies argue that the doctrine of sovereign immunity weighs against the states' right to jury trial here. We cannot see how sovereign immunity principles support the oil companies' argument. According to sovereign immunity principles, individuals are not entitled to sue governmental entities unless the entity consents. Frequently, the governmental entity consents to suit, but only on the condition that the private litigant forego a jury trial. Thus, by virtue of the doctrine of sovereign immunity, individuals may not be entitled to jury trials against the government. Just because individuals may not be entitled to jury trials against the government, it does not follow that the government is not entitled to jury trials against individuals.

analogous to that of the English crown, we also note that the crown was entitled to jury trial on demand under the common law that existed in 1791 in England. There are many cases, both before and after 1791, where the crown brought suit before a jury. The following are illustrative: *The King v. Cotton*, 145 Eng.Rep. 729 (1751) (dispute between the crown and a nobleman about who had priority as creditor of a bankrupt; reference to jury findings); *The King v. Marsh*, 145 Eng.Rep. 842 (1751) (pleading stage case mentioning limitations on what jury may decide); *The King v. Humphery*, 148 Eng.Rep. 371 (1824) (jury decided whether wharfinger had valid lien on goods seized by the crown to satisfy a debt); *Rex v. Peto*, 148 Eng.Rep. 577 (1826) (dispute over whether a custom house was built to crown's specifications—lists findings of jury).

In fact, trial by jury was originally a royal, as opposed to a popular right.

> At common law, the jury was developed not merely as a protection for the individual, but also by the monarchs for their use. Indeed, after the Norman Conquest juries were "the prerogative rights of the Frankish kings." 1 F. Pollack & F. Maitland, *The History of English law* 140 (2d ed. 1898 reprinted 1952). The jury "triumphed in this country [England] over the natural disinclination of Englishmen to admit that this 'palladium of our liberties' is in its origin not English but Frankish, not popular but royal." *Id.* at 141–41.

*E.E.O.C. v. Corry Jamestown Corp.*, 719 F.2d 1219, 1224 (3d Cir.1983).

■ In sum, applying the two-stage historical analysis to determine the scope of the Seventh Amendment, we find that the issues to be tried are legal and are the type that would have been tried to a jury in 1791. Moreover, we conclude that states enjoy a right to jury trial akin to that enjoyed by the English crown in 1791.

**B. The Seventh Amendment's Scope Is Not Limited to Individuals.**

■ The appellant oil companies argue next that the Seventh Amendment was only intended to preserve the jury trial right as it existed in 1791 for individuals, and not for governments. At the outset, we note that the appellants' argument finds no support in the neutral language of the Seventh Amendment, which says that "in suits at common law ... the right of trial by jury shall be preserved...." "By its terms, the [Seventh] [A]mendment is not restricted to citizens, but preserves the right for those who enjoyed it previously." *E.E.O.C. v. Corry Jamestown Corp.*, 719 F.2d 1219, 1224 (3d Cir.1983) (holding that the EEOC is entitled to jury trial when it brings suit on behalf of an individual employee for violations under the Age Discrimination in Employment Act).

Other provisions of the Bill of Rights, not as neutrally worded as the Seventh Amendment, have been interpreted to protect individuals and governments alike. The best example of this is the Sixth Amendment. Although the Sixth Amendment expressly provides the right to jury trial only for the "accused," the Supreme Court has held that the government has the right to insist on a jury trial once the accused has waived the right. *Singer v. United States*, 380 U.S. 24, 36, 85 S.Ct. 783, 790, 13 L.Ed.2d 630 (1965) (the government has a legitimate interest in seeing cases in which it believes conviction is warranted tried before the tribunal which the Constitution regards as most likely to produce a fair result).

Another example of a less-neutrally worded Bill of Rights provision held to protect state governments is the Fifth Amendment. It provides "nor shall any *person* ... be deprived of life, liberty, or property, without due process of law; nor shall *private property* be taken for public use, without just compensation." (Emphasis added.) Despite the fact that the Fifth Amendment seems to protect only individuals, as it is worded in terms of "person" and "private property," this court has held that the United States had to pay just compensation to California for taking un-

derwater lands to expand the San Francisco Naval Shipyard. *See California v. United States,* 395 F.2d 261, 263 (9th Cir. 1968).

Undeterred by the Seventh Amendment's neutral wording, the appellants delve exhaustively into both the sparse legislative history and the subsequent judicial interpretations of the Seventh Amendment in an effort to prove that it applies only to protect individuals from government curtailment of the right to jury trial, not to preserve such a right in government entities. First, the appellant oil companies refer to a number of state constitutions much less neutrally-worded than the Seventh Amendment, to support the notion that only individuals were meant to have the right to trial by jury. For example, The Delaware Declaration of Rights, passed in 1776, contained the following provision: "That trial by jury of facts where they arise is one of the greatest securities of the lives, liberties and estates *of the people." Sources of Our Liberties* 339 (R. Perry, J. Cooper ed. 1959) (emphasis added).

The wording of state constitutions is of little value in interpreting the scope of the Seventh Amendment, however, because states' practices regarding jury trial varied widely. In fact, the degree of variance between states at the time the Bill of Rights was passed accounted in large part for the neutral, and somewhat ambiguous, language of the Seventh Amendment.

> Thus, it was agreed that, with no federal practice to draw on and since state practices varied so widely, any compromising language would necessarily have to be general. As a result, although the Seventh Amendment achieved the primary goal of jury trial adherents to incorporate an explicit constitutional protection of the right of trial by jury in civil cases, the right was limited in general words to "suits at common law." (Footnote omitted.)

*Colgrove v. Battin,* 413 U.S. 149, 154–55, 93 S.Ct. 2448, 2451–52, 37 L.Ed.2d 522 (1973).

Second, the appellant oil companies rely on highly rhetorical suggestions for improvements to the federal constitution made by ratifying states. These suggestions speak of the right to jury trial as a right of individuals. For example, Pennsylvania ratified the Constitution but recommended that the First Congress amend the constitution to guarantee variety of individual rights, including the right to jury trial. The Pennsylvania antifederalists believed the proposed amendment was necessary to "preserve[ ] in the hands of the people, that share which they ought to have in the administration of justice." (Quoted in Wolfram, *The Constitutional History of the Seventh Amendment,* 57 Minn.L.Rev. 639, 695–96 (1973).

Also quoted by appellants are selected statements from the framers themselves indicating that the major concern behind the Seventh Amendment was protecting the right of individuals to jury trial. For example, in his speech introducing the proposed amendment to Congress, James Madison referred to the right to trial by jury as "essential to secure the liberty of the people...." 2 B. Schwartz, *The Bill of Rights: A Documentary History* 1029 (1971).

This rhetoric is unpersuasive. There is no evidence that these statements were prompted by the notion that to protect the right of individuals to a jury trial, states must be excluded from the Amendment's coverage. Rather, these statements were sparked by concern over the broad powers of the federal government under the new constitution.

Third, the appellants point out the interesting fact that an early draft of the Seventh Amendment was much less neutral, guaranteeing a right to a jury trial in controversies "between man and man." [10]

---

**10.** The very first proposal for a constitutional guarantee of the right to jury trial was introduced at the Philadelphia Constitutional Convention of 1787 by Charles Pinckney of South Carolina and Elbridge Gerry of Massachusetts. It was neutrally worded: "And a trial by jury shall be preserved as usual in civil cases." (Quoted in Wolfram, *The Constitutional History*

Both sides claims that this earlier draft supports their position. The states and amici argue that the elimination of the "between man and man" language was a conscious attempt on the part of the drafters to make the Seventh Amendment neutral, or even to affirmatively protect the right of governments to a jury trial. The appellants argue that the "between man and man" language indicates that the drafters never intended to protect government entities. They also argue that the change away from the "between man and man" language was meant to secure an individual's right to a jury trial against a government entity. We accept the view of the only authority cited by either party on the effect of the "between man and man" language. The commentator attaches no importance to the seemingly drastic change from "between man and man" to wording totally neutral on the nature of the parties protected by the Seventh Amendment. *See* 2 B. Schwartz, *The Bill of Rights, a Documentary History* 1050 (1971) ("It is fair to say that the Committee version [of the Bill of Rights] made no substantial alteration in the original Madison draft."). *See also* Wolfram, 57 Minn.L.Rev. at 728–29.

Finally, the appellants cite from many court cases expounding on the nature of the Bill of Rights and the Seventh Amendment in particular. All quotes are variations upon the theme that the Bill of Rights was designed to protect individuals. *E.g.*, *Lewis v. United States*, 385 U.S. 206, 209, 87 S.Ct. 424, 426, 17 L.Ed.2d 312 (1966) ("The various protections of the Bill of Rights, of course, provide checks ... for the protection of the individual."). These pronouncements were not made in situations where courts were considering the rights of state governments, and we find

them unpersuasive. Moreover, as we explain below, an additional ground for our holding is that by protecting the states' right to jury trial here, we are also protecting the rights of their individual citizens.

In sum, we find that the sparse legislative history of the Seventh Amendment does not demonstrate that the framers of the Constitution intended it to limit the right of jury trial to individuals only.

## V. THE STATES' DUAL ROLE IN THIS LITIGATION SUPPORTS THEIR RIGHT TO JURY TRIAL.

■ The premise underlying appellant oil companies' argument against the states' right to a jury trial is that the states are sovereigns, capable of protecting their own interests, and undeserving of protections afforded by the Bill of Rights, including the right to jury trial. But in this litigation, the states are suing in their proprietary, not sovereign, capacities, just as an injured individual or corporation would sue. In *Georgia v. Evans*, 316 U.S. 159, 162, 62 S.Ct. 972, 974, 86 L.Ed. 1346 (1942), the Supreme Court compared the states to ordinary individuals who suffer from violations of the antitrust laws. ("We can perceive no reason for believing that Congress wanted to deprive a State ... of the civil remedy of treble damages which is available to other purchasers...."). *See also Pfizer, Inc. v. Government of India*, 434 U.S. 308, 318–19, 98 S.Ct. 584, 590–91, 54 L.Ed.2d 563 (1978) (foreign government could sue for antitrust violation to same extent as any other person).

Moreover, the states are also suing as *parens patriae* on behalf of all their citizens, who would have a right to a jury trial if suing individually. 15 U.S.C. § 15(c) (1982). In analogous situations, the Supreme Court has held that the right to jury

---

of the Seventh Amendment, 57 Minn.L.Rev. 639, 660 (1973)).

The Constitutional Convention failed to enact a bill of rights, and the lack of individual rights guarantees was nearly fatal to ratification. When the First Congress met, the addition of a bill of rights was a high priority. James Madison's proposed amendment presented to Congress on June 8, 1789 contained the "between man and man" language. The phrase was taken

from the declaration of rights adopted by the Virginia ratification convention. *See* Wolfram at 728 n. 258. Madison's proposal was referred to a select committee, whose members revised Madison's draft to read "In suits at common law, the right of trial by jury shall be preserved." The House acting as a committee of the whole adopted the select committee's revision without debate. *See* Wolfram at 729.

trial on underlying claims is unaffected by the fact that suit is brought by someone acting in a representative capacity. For example, in *Ross v. Bernhard,* 396 U.S. 531, 90 S.Ct. 733, 24 L.Ed.2d 729 (1970), the Supreme Court held that the representative shareholder in a derivative action is entitled to a jury trial if the corporation would have had the right to a jury trial had it brought suit on its own.

> The claim pressed by the stockholder against directors or third parties "is not his own but the corporation's...." The heart of the action is the corporate claim. If it presents a legal issue, one entitling the corporation to a jury trial under the Seventh Amendment, the right to a jury trial is not forfeited merely because the stockholder's right to sue must first be adjudicated as an equitable issue triable to the court.

*Ross,* 396 U.S. at 538–39, 90 S.Ct. at 738–39 (citations omitted).

Similarly, in *E.E.O.C. v. Corry Jamestown Corp.,* 719 F.2d 1219, 1225 (3d Cir. 1983), the Third Circuit held that when the Equal Employment Opportunity Commission brings suit on behalf of a victim of age discrimination, the Commission is entitled to a jury trial. The Court explained that it would be inequitable and anomalous to hold that an individual otherwise entitled to a jury trial is deprived of that right because the Commission chooses to bring suit on his behalf.

> Therefore, if we were to adopt Corry Jamestown's interpretation of the governing statutory provisions, the Commission's decision to sue on an individual's behalf, rather than enuring to that individual's benefit, as Congress intended, would serve to deny the right to have the claim heard by a jury of one's peers. In order to avoid this inequitable and ano-

malous result, since the Commission is suing as a surrogate or in a representative capacity, the Commission must have the same rights that are possessed by the individual.

719 F.2d at 1225.

Here it would similarly be anomalous to deny the states a right to jury trial. Individual citizens would clearly have the right to jury trial on their individual claims, and the right to jury trial should not be affected by the fact that a state is suing on their behalf. Affording the states a jury trial essentially recognizes their citizens' rights to a jury trial on antitrust claims that may not be significant enough to be litigated individually, but that are of enormous collective importance.

Thus, the appellants' argument that the states are sovereign [11] and not entitled to a jury trial necessarily fails again because the states are suing in their proprietary capacities and as representatives of their citizens, who are clearly constitutionally entitled to a jury trial.

## VI. CONCLUSION

██ Modern juries have a dual purpose, "in criminal cases to prevent government oppression ... and in criminal and civil cases, to assure a fair and equitable resolution of factual issues...." *Colgrove v. Battin,* 413 U.S. 149, 157, 93 S.Ct. 2448, 2453, 37 L.Ed.2d 522 (1973) (citations omitted). The second function, the assurance of a fair and impartial resolution of factual questions, is at stake whether it is a state government or a private individual that desires a jury. *See E.E.O.C. v. Corry Jamestown Corp.,* 719 F.2d at 1224. As the Supreme Court has recognized, "[w]ith, perhaps, some exceptions, trial by jury has always been, and still is, generally regarded as the normal and preferable mode of disposing of issues of fact in civil cases at

---

**11.** The states correctly point out that although they may be considered sovereigns in their own court system, they are not sovereign when suing in the federal courts. They do not control the court system or enjoy special powers. It should also be pointed out that cities are not sovereigns even in the state court system, and thus Long Beach is in a better position than the states to

argue that it has the right to a jury trial. "Cities are not themselves sovereign; they do not receive all the federal deference of the states that create them." *City of Lafayette v. Louisiana Power & Light Co.,* 435 U.S. 389, 412–13, 98 S.Ct. 1123, 1136–37, 55 L.Ed.2d 364 (1978) (citations omitted).

law as well as in criminal cases." *Dimick v. Schiedt,* 293 U.S. 474, 485–86, 55 S.Ct. 296, 300–01, 79 L.Ed. 603 (1935). We conclude that the states and the citizens they represent should not be deprived of the "normal and preferable mode" of resolving their antitrust claims against the appellants.

AFFIRMED.