784 F.2d 952
 27 Wage & Hour Cas. (BN 924, 54 USLW 2536,
104 Lab.Cas. P 34,753
 SIUSLAW CONCRETE CONSTRUCTION COMPANY, Plaintiff-Appellant,
v.
STATE OF WASHINGTON, DEPARTMENT OF TRANSPORTATION and United
States Department of Transportation Federal
Highway Administration, Defendants-Appellees.
 No. 84-4266.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Oct. 9, 1985.
Decided March 11, 1986.
 
 Duane A. Bosworth, II, Black, Tremaine, Lankton, Krieger & Schmeer, Portland, Or., for plaintiff-appellant.
 Susan L. Barnes, Asst. U.S. Atty., Seattle, Wash., James F. Zotter, Portland, Or., for defendants-appellees.
 Appeal from the United States District Court for the Western District of Washington.
 Before BROWNING, KENNEDY and HUG, Circuit Judges.
 HUG, Circuit Judge:
 
 
 1
 Siuslaw Concrete Construction Company ("Siuslaw"), appeals from the district court's judgment that a Washington State statute, Wash.Rev.Code Sec. 39.12.021, which provides a minimum wage rate for nonapprentice trainees on federally-funded highway construction projects higher than that allowed under federal statutes and regulations, is constitutional and is not preempted by federal law. We affirm.
 
 BACKGROUND
 
 2
 The Federal-Aid Highways Program, 23 U.S.C. Secs. 101-158 (1982) (as amended), provides federal funds to assist states in constructing and repairing highways; participation in the program is at the state's option. After funds have been authorized by Congress and allocated among participating states by formula, each state submits a package of proposed projects to the Federal Highway Administration ("FHWA"), United States Department of Transportation ("USDOT"), which administers the program. Once the FHWA approves the state's proposals, the state then puts the individual projects out for bid, selects a contractor, and signs a contract for the project.
 
 
 3
 By electing to participate in the program, the state agrees to comply, and to require its contractors to comply, with federal statutory and regulatory requirements. First, 23 U.S.C. Sec. 114(a) requires that all work be performed in accordance with federal and state laws. Second, 23 U.S.C. Sec. 113(a) requires that all laborers and mechanics employed on federally-funded projects be paid the prevailing wage rate as determined by the Secretary of Labor under the Davis-Bacon Act, 40 U.S.C. Secs. 276a-276a-7 (1982).[1] However, 23 U.S.C. Sec. 113(c) exempts employees in certified apprenticeship and skill-training programs which promote equal employment opportunity from this requirement.[2]
 
 
 4
 23 U.S.C. Sec. 140 and Executive Order 11246 impose a third federal mandate, requiring highway contractors to take affirmative action in hiring, training, and promoting minorities and women, as a condition of federal participation in the project, Exec. Order No. 11,246, 30 Fed.Reg. 12,319 (1965). As a means of implementing this requirement, FHWA regulations at 23 C.F.R. Sec. 230.111 direct the state to develop annual statewide goals for training minorities and women as journeymen workers. The state then determines which projects will be used to train these workers and the number of trainees per project, and includes these requirements in the individual project's bid specifications.
 
 
 5
 Once a contractor has been selected for a project with a training component, he is required by 23 C.F.R. Sec. 230.111 and Subpart A, Appendix B, to submit a training proposal specifying such items as the number of trainees, the types and hours of training to be provided, the wage rates to be paid, and the expected training expense reimbursement to the state highway authority for approval. Subpart A, Appendix B of 23 C.F.R. Sec. 230 provides that the trainee wage rates will normally increase through the training period from sixty percent of the journeyman's prevailing wage to ninety percent. While the overall contract should not be signed until all the details have been settled, given the short time frames for highway construction in many parts of the country, it appears that conditional approval is often given so that the project may start on time, with the proviso that any differences will be resolved while the project and training are underway.
 
 
 6
 It is clear from the language in 23 U.S.C. Sec. 113(c) and from the accompanying regulations that contractors may pay trainees in these approved training programs less than the federally-required Davis-Bacon prevailing wage rate. In this case, Siuslaw, a contractor, contends that a state, through a state prevailing wage law, may not require a contractor to pay wages higher than those required by the federal regulations.
 
 FACTS
 
 7
 The State of Washington participates in the federal-aid highway program; defendant-appellee Washington State Department of Transportation ("WSDOT") administers the program for the State. In the spring of 1984, WSDOT, acting under its federally-approved plan, issued a revised proposal for bids for resurfacing two interstate highway bridges in King County. Siuslaw submitted a bid in April and was selected as the contractor.
 
 
 8
 On May 30, Siuslaw entered into a contract with WSDOT; shortly thereafter it submitted its training proposal. While the contract called for a minimum of three trainees, the proposal itself specified four, and the cover letter indicated that as many as ten trainees would be hired. The proposal also indicated that the trainees would be paid according to the progressive scale set forth in 23 C.F.R. Sec. 230, Subpart A, Appendix B. Siuslaw began work on the project on June 20.
 
 
 9
 On July 3, WSDOT sent Siuslaw a letter which stated:
 
 
 10
 Your Training Program has been granted approval; however, the following items must be addressed:
 
 
 11
 1. All non-apprentice trainees must be paid journeyman wages. RCW 39.12.02 states, in part, that "... Any workman for whom an apprenticeship agreement has not been registered and approved by the State Apprenticeship Council shall be considered to be a fully qualified journeyman, and therefore, shall be paid at the prevailing hourly wage for journeymen...."
 
 
 12
 Our District Office will confer with Headquarters at various times to receive guidance and clarification whenever necessary. When this occurs, additional response time may be necessary and this office's one week turn-around time may be somewhat extended as a result. Therefore, if there are trainees to be approved the name, race, sex, social security number, date of hire, outline of previous training/experience already received, and documentation of good faith effort for all trainees who are not members of a protected class group will be necessary prior to granting approval. Since there can be no retroactive approval granted for non-apprentice trainees, the request should be submitted as soon as possible. Once all trainees are approved, the training program will be granted final approval.
 
 
 13
 If you have any job descriptions and/or labor rates that do not fit approved labor rates, please submit them to us for approval as soon as possible. (emphasis in original)
 
 
 14
 There were two effects of WSDOT's letter. First, since the trainees under Siuslaw's contract were not enrolled in a formal apprenticeship program, they would have to be paid journeyman's wages even though the federal regulations apparently allowed them to be paid less. Second, WSDOT's request for information on individual trainees delayed the approval date. Since approval was not retroactive, Siuslaw apparently would have to pay trainees journeyman's wages until the program was approved.
 
 
 15
 Siuslaw responded by filing a complaint against WSDOT and FHWA in the district court on July 13, seeking a declaratory judgment that Wash.Rev.Code Sec. 39.12.021 is unconstitutional because it is preempted by federal laws and regulations. Siuslaw also sought a temporary restraining order, a temporary injunction, and a permanent injunction, enjoining the operation and enforcement of Wash.Rev.Code Sec. 39.12.021, and moved to shorten the time for a hearing.
 
 
 16
 On July 16, the court granted the request and a hearing on the preliminary injunction was held on July 23; the motion was denied. A trial was held on August 10. Since the parties agreed on the essential facts, the trial focused on the preemption issue. The court found for defendants, holding that Wash.Rev.Code Sec. 39.12.021 is not preempted by federal laws and regulations. Siuslaw appeals from the judgment.
 
 DISCUSSION
 
 17
 The sole issue in this case is whether Wash.Rev.Code Sec. 39.12.021 is preempted by federal laws and regulations. It thus presents a question of law, which we review under the de novo standard. Standard Oil Co. of Cal. v. Arizona, 738 F.2d 1021, 1023 (9th Cir.1984), cert. denied, --- U.S. ----, 105 S.Ct. 815, 83 L.Ed.2d 807 (1985); Hoptowit v. Ray, 682 F.2d 1237, 1245 (9th Cir.1982), later appeal, Hoptowit v. Spellman, 753 F.2d 779 (9th Cir.1985).
 
 
 18
 In deciding this issue, we are guided by the Supreme Court's recent statement that
 
 
 19
 It is a familiar and well established principle that the Supremacy Clause, US Const, Art VI, cl 2, invalidates state laws that "interfere with, or are contrary to" federal law.... Under the Supremacy Clause, federal law may supersede state law in several different ways. First, when acting within constitutional limits, Congress is empowered to pre-empt state law by so stating in express terms.... In the absence of express preemptive language, Congress' intent to preempt all state law in a particular area may be inferred where the scheme of federal regulation is sufficiently comprehensive to make reasonable the inference that Congress "left no room" for supplementary state regulation.... Pre-emption of a whole field also will be inferred where the field is one in which "the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject." ...
 
 
 20
 Even where Congress has not completely displaced state regulation in a specific area, state law is nullified to the extent that it actually conflicts with federal law. Such a conflict arises when "compliance with both federal and state regulations is a physical impossibility," ... or when state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." ...
 
 
 21
 We have held repeatedly that state laws can be pre-empted by federal regulations as well as by federal statutes.
 
 
 22
 Hillsborough County, Florida v. Automated Medical Laboratories, Inc., 471 U.S. ----, 105 S.Ct. 2371, 2375, 85 L.Ed.2d 714, 721 (1985) (citations omitted).
 
 
 23
 In this case, there is no express statement of congressional intent to preempt state laws.[3] Siuslaw does not claim that such a statement exists, but argues that Wash.Rev.Code Sec. 39.12.021 is preempted because first, there is federal intent to occupy the field, and, second, the state statute stands as an obstacle to the accomplishment of federal purposes.
 
 
 24
 * Federal Intent to Occupy the Field
 
 
 25
 Siuslaw advances two arguments in its attempt to show federal intent to occupy the field; both are based on purported limitations on WSDOT's authority to approve training programs. First, it claims that 23 C.F.R. Sec. 230.111(f)(1) provides that a contractor may avoid the necessity of state approval by obtaining approval from the United States Department of Labor and that this provision indicates that it is only the federal standard that is to be met. The second argument is that 23 C.F.R. Sec. 230.111(d) and (e)(1) expressly limit WSDOT's approval authority over training programs to the sole question of whether they meet federal standards. We address each of these arguments in turn.
 
 
 26
 * With regard to its first argument, Siuslaw cites 23 C.F.R. Sec. 230.111(f)(1), which says that "[a]pprenticeship programs approved by the U.S. Department of Labor ... need not be formally approved by the State highway agency.... Such programs, including their minimum wage provisions, are acceptable ... provided they are administered in a manner reasonably calculated to meet the equal employment opportunity obligations of the contractor." Thus, Siuslaw argues, a contractor may avoid the necessity of state approval by obtaining approval from the United States Department of Labor instead.
 
 
 27
 However, there is a distinction between "apprenticeship programs approved by the U.S. Department of Labor" and the other training programs authorized under 23 C.F.R. Secs. 230.101-.121. The National Apprenticeship Act of 1937, 29 U.S.C. Sec. 50 (1982), provides:
 
 
 28
 The Secretary of Labor is authorized and directed to formulate and promote the furtherance of labor standards necessary to safeguard the welfare of apprentices, to extend the application of such standards by encouraging the inclusion thereof in contracts of apprenticeship, to bring together employers and labor for the formulation of programs of apprenticeship, to cooperate with State agencies engaged in the formulation and promotion of standards of apprenticeship, and to cooperate with the Secretary of Education in accordance with section 17 of Title 20....
 
 
 29
 In implementing this statutory provision, the United States Department of Labor regulations at 29 C.F.R. Secs. 29.1-29.13 (1985) set forth a detailed regulatory scheme defining apprenticeship programs and their requirements, and establish a review, approval, and registration process for proposed apprenticeship programs administered by State Apprenticeship Councils under the aegis of the United States Department of Labor; these requirements and procedures are more demanding than those imposed by 23 C.F.R. Sec. 230.111. Hence, it appears that the federal intent in 23 C.F.R. Sec. 230.111(f)(1) was to prevent a needless review by WSDOT of an apprenticeship program that had already passed a stricter review by the State Apprenticeship Council. Further, as WSDOT argues, since a state agency approves apprenticeship programs, it appears that there was no federal intent to allow contractors to bypass approval by a state agency. Thus, Siuslaw's first attempt to show federal intent to occupy the field is without merit.
 
 B
 
 30
 In its second argument, Siuslaw concedes to WSDOT a significant role in determining which projects have training programs, but it claims that 23 C.F.R. Sec. 230.111(d) and (e)(1) expressly limit WSDOT's approval authority over these projects to the sole question of whether they meet federal standards. Subsection (d) states that "[t]raining programs ... shall be approved only if they meet the standards set forth in Appendix B with regard to: ... (4) The minimum wages of trainees." Appendix B sets forth the progressive wage scale described earlier. Subsection (e)(1) says that "[t]raining programs considered ... to meet the standards under this directive shall be submitted to the FHWA ... with a recommendation for approval." Here, FHWA has delegated its approval authority to WSDOT. Siuslaw argues that WSDOT may review the training proposal only to determine whether it meets federal standards, and that any proposal that meets these standards must be approved. WSDOT argues, however, that although these subsections require it to review training proposals to insure that federal minimum standards are met before approval is granted, they do not preclude it from imposing higher minimum wages.
 
 
 31
 In this second argument, Siuslaw raises the question of whether the quoted regulations are so comprehensive in nature that we must infer federal intent to occupy the field. In Hillsborough, the Court quoted New York Department of Social Services v. Dublino, 413 U.S. 405, 415, 93 S.Ct. 2507, 2514, 37 L.Ed.2d 688 (1973), as stating that
 
 
 32
 "[t]he subjects of modern social and regulatory legislation often by their very nature require intricate and complex responses from the Congress, but without Congress necessarily intending its enactment as the exclusive means of meeting the problem." Id., at 415, 37 L.Ed.2d 688, 93 S.Ct. 2507 [at 2514]. There, in upholding state work-incentive provisions against a pre-emption challenge, the Court noted that the federal provisions "had to be sufficiently comprehensive to authorize and govern programs in States which had no ... requirements of their own as well as cooperatively in States with such requirements." Ibid. But merely because the federal provisions were sufficiently comprehensive to meet the need identified by Congress did not mean that States and localities were barred from identifying additional needs or imposing further requirements in the field. See also De Canas v. Bica, 424 U.S. 351, 359-360, 47 L.Ed.2d 43, 96 S.Ct. 933 [938-939] (1976).
 
 
 33
 We are even more reluctant to infer pre-emption from the comprehensiveness of regulations than from the comprehensiveness of statutes. As a result of their specialized functions, agencies normally deal with problems in far more detail than does Congress. To infer pre-emption whenever an agency deals with a problem comprehensively is virtually tantamount to saying that whenever a federal agency decides to step into a field, its regulations will be exclusive. Such a rule, of course, would be inconsistent with the federal-state balance embodied in our Supremacy Clause jurisprudence. See Jones v. Rath Packing Co., 430 U.S. at 525, 51 L.Ed.2d 604, 97 S.Ct. 1305 [at 1309].
 
 
 34
 Moreover, because agencies normally address problems in a detailed manner and can speak through a variety of means, including regulations, preambles, interpretive statements, and responses to comments, we can expect that they will make their intentions clear if they intend for their regulations to be exclusive. Thus, if an agency does not speak to the question of pre-emption, we will pause before saying that the mere volume and complexity of its regulations indicate that the agency did in fact intend to pre-empt.
 
 
 35
 Hillsborough, 105 S.Ct. at 2377, 85 L.Ed.2d at 723-24.
 
 
 36
 Here, Siuslaw does not argue that the statute and regulations comprise a comprehensive regulatory scheme. Instead, it argues only that there was clear federal intent to limit state authority in one area, the approval process. Yet Siuslaw provides no evidence beyond the words of the regulation themselves to support this contention; further, the regulation itself contains no language showing federal intent to limit state approval authority in this area to a mere review for compliance with federal minimum standards. Thus, given the Hillsborough Court's statement that "we can expect that [federal agencies] will make their intentions clear if they intend for their regulations to be exclusive," this court will not infer a federal intent to preempt state requirements in this area from a regulation which does not explicitly address the issue. Further, even when considered as a whole, the statute and the FHWA training program regulations are not overly voluminous, detailed, and complex, especially when compared to the apprenticeship programs also authorized under these provisions. Finally, even if this court were to find the statute and regulations comprehensive, the Hillsborough Court's reluctance to assume preemption from "mere volume and complexity" militates against Siuslaw's attempt to show federal intent to preempt the state in this area.
 
 II
 
 37
 State Law as an Obstacle to Federal Objectives
 
 
 38
 As noted above, Siuslaw also contends that Wash.Rev.Code Sec. 39.12.021 is preempted by federal law because it is an obstacle to the accomplishment of federal objectives.[4] It appears from Siuslaw's brief that its argument is based on the assumption that there is a three-step approval process (WSDOT, State Apprenticeship Council, and FHWA) and that this creates undue delay, thus frustrating the federal purpose of training minorities and women in highway construction jobs. However, as discussed earlier, FHWA has delegated its approval authority to WSDOT, and the State Apprenticeship Council operates a separate approval process for apprenticeship programs. Thus, there is no three-step process. Siuslaw next argues that contractors will be reluctant to hire trainees if they must pay them the higher wage mandated by the Washington statute; Siuslaw is apparently concerned only that contractors will not hire trainees over the required number, and not that contractors will fail to bid on a contract because of the minimum trainee requirement.
 
 
 39
 In Metropolitan Life Insurance Co. v. Massachusetts, 471 U.S. ----, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985), the Court quoted De Canas v. Bica, 424 U.S. 351, 356, 96 S.Ct. 933, 937, 47 L.Ed.2d 43 (1976): "States possess broad authority under their police powers to regulate the employment relationship within the State. Child labor laws, minimum and other wage laws, laws affecting occupational health and safety ... are only a few examples." 105 S.Ct. at 2391 (emphasis added). Further, there is a presumption that the state statute is valid unless there is clear congressional intent to preempt this area. Pacific Legal Foundation v. State Energy Resources Conservation & Development Commission, 659 F.2d 903, 919 (9th Cir.1981), aff'd, 461 U.S. 190, 103 S.Ct. 1713, 75 L.Ed.2d 752 (1982); see Bucyrus-Erie Co. v. Department of Industry, Labor & Human Relations, 453 F.Supp. 75, 78 (E.D.Wis.1978), aff'd, 599 F.2d 205 (7th Cir.1979), cert. denied, 444 U.S. 1031, 100 S.Ct. 701, 62 L.Ed.2d 667 (1980), for a discussion of Supreme Court decisions in this area. The Washington statute is a minimum wage law enacted by the State as an exercise of its police power. Thus, Siuslaw has the burden of producing evidence sufficient to overcome this presumption.
 
 
 40
 A review of the record shows that to support its first contention--that paying journeyman's wages will discourage contractors from hiring more than the required number of trainees--Siuslaw offered no evidence at all to support its contention. On the other hand, WSDOT offered both affidavits and official reports showing that for the six years preceding trial it had met or exceeded its annual training goals for minorities and women. Siuslaw asserts that even if training goals are met, the federal purpose of full utilization of all available training and skill-improvement opportunities, set forth in 23 C.F.R. Sec. 230.107(b), is frustrated because Congress intended that more than a required minimum number of trainees be hired. Again, however, Siuslaw offers no evidence of either congressional intent or a deterrent effect on contractors. Thus, Siuslaw has failed to provide any basis for overcoming the presumption of validity of the state statute. It is just as reasonable to conclude that while Congress clearly intended to expand training opportunities for minorities and women, it did not intend to encroach upon state power to set minimum wage rates higher than those required by federal law, since 23 U.S.C. Sec. 114(a) requires compliance with state laws.
 
 
 41
 Siuslaw also contends that WSDOT's request for additional information before a trainee is approved stretches the approval process well into the construction phase of the project, and, because approval is not retroactive, the longer the approval process, the longer a contractor must apparently pay journeyman's wages, thus increasing its costs and reducing its incentive to participate. The record again shows that it offered no evidence to show that this is, in fact, occurring. However, WSDOT did offer evidence showing that the request for additional information is an attempt to meet congressional objectives by insuring that the targeted groups are actually hired. Thus, Siuslaw has failed to carry its burden in this area as well.
 
 
 42
 Because Siuslaw has failed to show either federal intent to occupy the field through comprehensive regulation or that compliance with the Washington statute stands as an obstacle to the accomplishment of federal purposes, the judgment of the district court is affirmed.
 
 
 43
 AFFIRMED.
 
 
 
 [1]
 23 U.S.C. Sec. 113(a) reads as follows:
 The Secretary shall take such action as may be necessary to insure that all laborers and mechanics employed by contractors or subcontractors on the construction work performed on highway projects on the Federal-aid systems, the primary and secondary, as well as their extensions in urban areas, and the Interstate System, authorized under the highway laws providing for the expenditure of Federal funds upon the Federal-aid systems, shall be paid wages at rates not less than those prevailing on the same type of work on similar construction in the immediate locality as determined by the Secretary of Labor in accordance with the Act of August 30, 1935, known as the Davis-Bacon Act (40 U.S.C. Sec. 267(a)).
 
 
 [2]
 23 U.S.C. Sec. 113(c) states that:
 The provisions of the section shall not be applicable to employment pursuant to apprenticeship and skill training programs which have been certified by the Secretary of Transportation as promoting equal employment opportunity in connection with Federal-aid highway construction programs.
 
 
 [3]
 As far as the Davis-Bacon Act is concerned, 40 U.S.C. Sec. 276a-3 (1982) says that it will "not be construed to supersede or impair any authority otherwise granted by Federal law to provide for the establishment of specific wage rates," but is silent with regard to state statutes. The Federal-Aid Highways Act contains no statement about its effect on either federal or state statutes
 
 
 [4]
 Siuslaw does not contend that the statute is preempted under either the "dominant federal interest" or "physical impossibility" criteria mentioned by the Hillsborough Court