642 F.2d 397
 UNITED STATES of America, Appellee,
v.
STATE OF NEW MEXICO; Department of Taxation and Revenue of
the State of New Mexico; and Fred Muniz, as Secretary of the
Department of Taxation and Revenue for the State of New
Mexico, and his successors in office, Appellants.
 No. 79-1632.
 United States Court of Appeals,
Tenth Circuit.
 Argued Jan. 26, 1981.
Decided March 6, 1981.
 
 John A. Dudeck, Jr., Washington, D.C. (M. Carr Ferguson, Asst. Atty. Gen., Gilbert E. Andrews and Ann Belanger Durney, Attys., Dept. of Justice, Washington, D.C., R. E. Thompson, U. S. Atty. and Ruth C. Streeter, Asst. U. S. Atty., Albuquerque, N.M., with him on brief), for appellee.
 Jan Unna, Santa Fe, N.M. (Jeff Bingaman, Atty. Gen. of New Mexico, Santa Fe, N.M., with him on briefs), for appellants.
 Before McWILLIAMS, BREITENSTEIN and McKAY, Circuit Judges.
 BREITENSTEIN, Circuit Judge.
 
 
 1
 In this tax dispute between the United States and the State of New Mexico the only question is whether New Mexico is entitled to a jury trial. The New Mexico tax was assessed against, and originally paid by, a private contractor. The tax was passed on to, and ultimately paid by, the United States. The trial court denied the jury request, and after a trial to the court gave judgment for the United States, and against New Mexico, for over $127,000. We reverse and remand for a trial by jury.
 
 
 2
 The challenged tax relates to radio telescope antennas to be used at the National Radio Astronomy Observatory's Very Large Array (VLA) project in New Mexico. The project is owned and operated by the United States through its agency, the National Science Foundation. The Foundation contracted with a private organization, Associated Universities, Inc. (AUI), to conduct the project activities. AUI in turn contracted with a private corporation, E-Systems, for the design, manufacture, and assembly of 28 radio telescope antennas to be used on the project.
 
 
 3
 Each antenna weighs about 210 tons and has an 82 foot diameter reflector for collecting radio signals. The antennas can be arranged in various configurations by rail transportation to 72 observation platforms located at various points along a Y-shaped array. The ability to focus at various configurations is essential to the VLA scientific mission. The antennas are sensitive instruments capable of collecting radio signals of minute energy levels transmitted from objects billions of light years away from the Earth. The antennas do not transmit radio signals.
 
 
 4
 New Mexico determined that E-Systems in the fulfillment of its contract with AUI, performed "construction services" which are subject to the state Gross Receipts Tax. E-Systems paid a tax of $127,122.59 and passed the cost on to AUI which was reimbursed by the United States through the National Science Foundation. The United States claims that the transaction between E-Systems and AUI was a non-taxable sale of tangible personal property.
 
 Section 7-9-3, NMSA 1978, provides:
 
 5
 "C 'construction' means building, altering, repairing or demolishing in the ordinary course of business any:
 
 
 6
 (9) radio or other tower; (or)
 
 
 7
 (12) similar work:
 
 
 8
 K 'Service' includes construction activities and all tangible personal property that will become an ingredient or component part of a construction project. * * *."
 
 
 9
 In compliance with Rule 38, F.R.Civ.P., New Mexico made, and the court rejected, a timely demand for a jury trial. After trial without a jury the court held that the antennas were not "radio towers" or "similar work" and hence E-Systems was not subject to the New Mexico tax. On this appeal, New Mexico raises the sole issue that it was wrongfully denied a jury trial.
 
 
 10
 In United States v. New Mexico, 10 Cir., 624 F.2d 111, cert. granted, --- U.S. ----, 101 S.Ct. 1346, 66 L.Ed.2d --- (1981), we held that a contractor operating a plant owned by the Department of Energy does not share the tax immunity enjoyed by the government and is subject to the New Mexico Gross Receipts and Compensating Tax Act. The instant case is different. It involves the imposition of a tax on one who installs facilities to be used by a project operator. On this appeal the United States does not assert any claim under any federal statute, does not argue that the contractor, E-Systems, was immune from the state tax by reason of any agency relationship which would cause government immunity to apply, and does not invoke the Supremacy Clause except to the extent that it might affect the right to a jury trial.
 
 
 11
 The New Mexico claim is based on the Seventh Amendment provision that: "In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved * * *." "The federal policy favoring jury trials is of historic and continuing strength." Simler v. Conner, 372 U.S. 221, 222, 83 S.Ct. 609, 610, 9 L.Ed.2d 691. Determination of whether a suit is legal or equitable for Seventh Amendment purposes "must be made by recourse to federal law." Id. The constitutional right applies only to cases at law and not to cases under the exclusive jurisdiction of equity courts. Shields v. Thomas, 18 How. 253, 262, 59 U.S. 253, 262, 15 L.Ed.2d 368.
 
 
 12
 Rules 1 and 2, F.R.Civ.P., merge actions at law and equity into one form of action. United States v. Anderson, 10 Cir., 584 F.2d 369, 373, adopts the three-part test of Ross v. Bernhard, 396 U.S. 531, 538, n. 10, 90 S.Ct. 733, 738, n. 10, 24 L.Ed.2d 729, for determination of the right to jury trial. The factors of the test are (1) pre-merger custom, (2) remedy sought, and (3) abilities and limitations of juries. 584 F.2d at 373. As to (3), the Supreme Court has held that a jury trial is required in an accounting suit for trademark infringement, Dairy Queen v. Wood, 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44, and in a suit for treble damages under the anti-trust laws. Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988. The instant case is simpler. The issue whether the radio telescope antennas are radio towers or similar thereto so as to sustain a tax on the construction services of E-Systems is neither complex nor abstruse.
 
 
 13
 The second factor is the remedy sought. The United States sued for declaratory and injunctive relief and for recovery of the taxes which its sub-contractor had paid to New Mexico. The claim is that the assessment and consequent tax payment were not authorized or required by New Mexico law. Declaratory relief may be legal or equitable depending on the basic nature of the underlying issues. Hargrove v. American Century Insurance Co., 10 Cir., 125 F.2d 225, 228. The Declaratory Judgment Act specifically preserves the right of jury trial on issues for which that right is otherwise guaranteed, Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 504, 79 S.Ct. 948, 953, 3 L.Ed.2d 988.
 
 
 14
 The United States argues that this action is equitable in nature because it seeks injunctive relief against future imposition of the tax. The argument is weakened by the stipulation of the parties that, if the tax is not sustained under the New Mexico statute, New Mexico "will not thereafter seek to assess or collect the gross-receipts tax from E-Systems, AUI or the United States of America." R. 70. Thus, the determination of the legal question resolves the right to equitable relief.
 
 
 15
 Determination of the effect of the pre-merger distinctions between legal and equitable actions "must be determined, not by precedents decided under discarded procedures, but in the light of the remedies now made available by the Declaratory Judgment Act and the Federal Rules." Beacon Theatres, supra, 359 U.S. at 507, 79 S.Ct. at 954. The permissible joinder of legal and equitable claims contemplates one disposition of an action, not piecemeal dispositions. The right of the United States to a permanent injunction may be recognized by court order after the jury has determined the factual issues. The claim for an injunction should not be determinative of the right of New Mexico to a jury trial on fact issues.
 
 
 16
 The government says that its request for monetary relief is not to obtain a tax refund but rather to secure restitution, an equitable remedy. The amended complaint prays for judgment in the amount of taxes paid, plus interest and penalties. The pre-trial order says that the United States seeks injunctive relief and restitution. The constitutional right to jury trial does not depend on a choice of words. Dairy Queen v. Wood, 369 U.S. 469, 477-478, 82 S.Ct. 894, 899-900, 8 L.Ed.2d 44. Whatever language is used, the United States is in the position of a taxpayer who wants to get his money back. The question is whether in 1791, when the Seventh Amendment was adopted, a taxpayer would have been entitled to a jury trial in a tax refund suit. Rights to jury trials existing at common law were preserved by that amendment. Baltimore and Carolina Line, Inc. v. Redman, 295 U.S. 654, 657, 55 S.Ct. 890, 891, 79 L.Ed. 1636. An historical analysis is required because the issue relates to a fundamental right, not some evolved procedural device. Parklane Hosiery Co., Inc. v. Shore, 439 U.S. 322, 336-337, 99 S.Ct. 645, 654-655, 58 L.Ed.2d 552.
 
 
 17
 The government cites no cases bearing on whether the common law as it existed before 1791 denied the right to jury trial in a tax refund suit. Phillips v. Commissioner, 283 U.S. 589, 595, 51 S.Ct. 608, 611, 75 L.Ed. 1289, says that summary procedures for collection of federal taxes are constitutionally permissible so long as there is adequate opportunity for "ultimate judicial determination of liability." Id. at 597, 51 S.Ct. at 611. The decision does not discuss the historical derivation of the right to recover a tax wrongfully imposed.
 
 
 18
 English precedents for jury trial of an action to recover taxes assessed and paid are discussed in Kirst, Administrative Penalties and Civil Jury, 126 U.Pa. 1281, 1313-1320. See e. g. Williams v. Pritchard, 100 Eng.Rep. 862 (K.B.1790); Harrison v. Bulcock, 126 Eng.Rep. 42 (C.P.1788); Nichols v. Walker, 79 Eng.Rep. 944 (K.B.1634); and the Case of the Marshalsea, 77 Eng.Rep. 1027 (K.B.1612). Early American cases indicate that juries were used when a taxpayer sued to recover taxes illegally exacted. See Kirst, supra, pp. 1328-1331, notes 230-245; and Thurston v. Martin, 23 F. Cases 1189 (C.C.D.R.I.1830).
 
 
 19
 In Elliot v. Swartwout, 10 Pet. 137, 158, 35 U.S. 137, 158, 9 L.Ed. 373, the Court relied on English and state precedents to establish that the collector was personally subject to a common law action to recover an excess of tax if the taxpayer gave notice of the claim of error when making payment. The United States says that tax refund suits are creatures of statute, not of the common law. It makes no reference to any statute which is applicable to a federal claim for refund of a tax imposed by state law, and we know of none. We recognize that Atlas Roofing Co., Inc. v. Occupational Safety & Health Review Commission, 430 U.S. 442, 97 S.Ct. 1261, 51 L.Ed.2d 464, creates a "public rights" exception to the application of the Seventh Amendment and upholds a statutorily created procedure for administratively enforcing a civil penalty without a jury trial. The instant case does not present any applicable federal statute. Katchen v. Landy, 382 U.S. 323, 325, 86 S.Ct. 467, 470, 15 L.Ed.2d 391, holds that a bankruptcy court may determine a preference dispute without a jury trial. Again, the holding is predicated on a federal statute, the Bankruptcy Act.
 
 
 20
 The government's reference to Murray's Lessee v. Hoboken Land and Improvement Co., 18 How. 272, 59 U.S. 272, 15 L.Ed. 372 is not helpful. That case involved a challenge to a summary proceeding established by an 1820 act of Congress regarding the Treasury Department, 3 Stat. 592, to secure the satisfaction of taxes collected by a federal revenue agent but not paid over to the government. Wickwire v. Reinecke, 275 U.S. 101, 105, 48 S.Ct. 43, 44, 72 L.Ed. 184, says that in a suit against the Commissioner of Internal Revenue to recover estate taxes the right to a jury trial arises by implication from a federal statute. The English case law demonstrates that the common law right to jury trial pre-dates the Seventh Amendment and any federal statutes.
 
 
 21
 We are persuaded that the right of a taxpayer to a jury trial in refund cases is rooted in the common law and was preserved by the Seventh Amendment. The right of a federal taxpayer to a jury trial when he pays the tax and sues to recover is recognized by statute. Section 1346(a)(1), 28 U.S.C., provides that the United States district courts, concurrently with the Court of Claims, have jurisdiction over civil claims against the United States for the recovery of taxes wrongfully collected. Section 2402, as amended in 1954, provides "that any action against the United States under section 1346(a)(1) shall, at the request of either party to such action, be tried by the court with a jury."
 
 
 22
 This jury trial provision was added in 1954. 68 Stat. 589. The legislative history says that jury trials had always been permitted in actions brought against appropriate revenue collectors by taxpayers seeking to recover taxes wrongfully collected. Conf.Rep.No. 2276, 83rd Cong. 2d Sess., 1954 U.S.Code Cong. & Adm.News 2716, 2717. The pertinent legislative history is discussed in Kirst, supra, pp. 1336-1338, notes 269-273.
 
 
 23
 The 1954 congressional action is a reaffirmation of the common law recognition of the right to jury trial. It is anomalous for the federal government to recognize that right in a case where the United States is a defendant but not in a case where the United States is a plaintiff. The right should apply in either situation.
 
 
 24
 The United States says that the present action is not based on the common law. It says that it seeks to prevent a subordinate unit of government from interfering with its sovereign powers in violation of the Supremacy Clause. U.S. Constitution Art. VI, § 2. The rights which the United States seeks to enforce are not based on any federal statute. Instead, in this action the United States claims that the tax is not authorized by New Mexico law.
 
 
 25
 Congress has passed no law immunizing the United States from the tax. The Supremacy Clause provides no exemption from the Seventh Amendment where the substantive legal issue of the action is entirely one of state statute, not federal legislation. As the defendant in the action, New Mexico has the right to invoke the Seventh Amendment. As the plaintiff, the United States is as much subject to that amendment as is the private citizen.
 
 
 26
 The final government argument is that the refusal of a jury trial is of no consequence because the United States would be entitled to a directed verdict in its favor. We are not impressed. The parties stipulated that the issue of fact for decision was whether the activities of E-Systems constituted "construction" as defined in the New Mexico statute. The stipulation covered many of the pertinent facts. The government called an expert witness who testified that the procurement of the antennas did not "involve construction activity." Tr. 118-119. New Mexico countered with an expert who testified that "the whole structure is a tower, and it supports a radio antenna so therefore it become a radio tower." Tr. 177-178. He also testified that some radio towers only receive, and do not transmit, radio signals. Tr. 179. Thus, each side presented substantial evidence to sustain its position. New Mexico is entitled to have a jury decide the pivotal issue of fact. The bold assertion of government counsel that it is entitled to win on the merits has no effect on the right of New Mexico to a jury trial.
 
 
 27
 We are convinced that the Ross v. Bernhard three-part test of pre-merger custom, remedy sought, and jury ability, 396 U.S. 531 at 538, n. 10, 90 S.Ct. 733, at 738, n. 10, 24 L.Ed.2d 729, calls for the conclusion that New Mexico has the Seventh Amendment right to a jury trial.
 
 
 28
 Reversed and remanded for trial to a jury.