F I L E D
United States Court of Appeals
Tenth Circuit

AUG 3 1999

PATRICK FISHER
Clerk

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

FISCHER IMAGING CORPORATION,

     Plaintiff-Counter-
     Defendant-Appellant,

v.

GENERAL ELECTRIC COMPANY,

     Defendant-Counter-
     Claimant-Appellee.

No. 98-1225

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. No. 97-WY-2529-WD)

Richard P. Holme, Davis, Graham & Stubbs, LLP, Denver, Colorado for Plaintiff-Counter-Defendant-Appellant.

Terry M. Grimm, (John P. Carreon and Rachel M. Janutis, Winston and Strawn, Chicago, Illinois and George B. Curtis, Gregory J. Kerwin, Patricia E. Foley, Gibson, Dunn & Crutcher, LLP, Denver, Colorado, with him on the briefs), Winston and Strawn, Chicago, Illinois for Defendant-Counter-Claimaint-Appellee.

Before **BALDOCK**, **HOLLOWAY**, and **HENRY**, Circuit Judges.

**BALDOCK**, Circuit Judge.

This dispute arose from a purchase agreement between Plaintiff Fischer Imaging

Corporation ("Fischer") and Defendant General Electric Company ("GE") for the manufacture and purchase of medical imaging devices called Tilt C units. Fischer brought this diversity action in federal district court, seeking a declaratory judgment to determine a reasonable price for the Tilt C units. See 28 U.S.C. §§ 1332(a), 2201. GE filed a counterclaim seeking specific performance of the production requirements contained in the purchase agreement. Fischer timely filed a demand for a jury trial which the district court struck upon GE's motion. The district court, however, exercised its discretion pursuant to Fed. R. Civ. P. 39(c) and empaneled an advisory jury.

The advisory jury returned a verdict setting the reasonable price at $157,400 per Tilt C unit. Choosing not to follow the advisory jury's verdict, the district court issued an "Order and Judgment" setting the reasonable price at $122,648 per unit for Tilt C units delivered in 1998 and $126,082 per unit for Tilt C units delivered in 1999, and ordering Fischer to perform its obligations under the contract. Fischer appeals on the sole ground that the district court improperly struck its jury demand. To remedy the alleged error, Fischer seeks a remand directing the district court to instate the advisory jury's verdict as the judgment in this case. Our jurisdiction arises under 28 U.S.C. § 1291. We reverse and remand for a new trial.

## I. Background

On August 29, 1994, the parties entered into an agreement for the sale of Tilt C units. The units are used in a medical imaging product produced by GE. The initial

2

purchase agreement expired on December 31, 1997, but GE retained the unilateral power to extend the term of the agreement for two years. On June 25, 1997, GE provided Fischer with notice of its intent to exercise its option to extend the agreement. The initial contract contained pricing provisions, but these provisions did not apply to the extended term of the contract. Fischer indicated to GE that it would not order materials or schedule production of the Tilt C units under the extended term of the contract until the parties reached an agreement on the price per unit. The parties attempted unsuccessfully to negotiate a new price. As a result, Fischer filed the instant declaratory action asking the district court to determine a reasonable price for the units under Colo. Rev. Stat. § 4-2-305(1). Under Colorado's Commercial Code, parties may "conclude a contract for sale even though the price is not settled. In such a case, the price is a reasonable price at the time for delivery . . . ." Colo. Rev. Stat. § 4-2-305(1). GE counterclaimed for specific performance of the extended agreement. The district court struck Fischer's jury demand, tried the case with an advisory jury, did not follow the advisory jury's verdict, set the price for the units and ordered Fischer to produce the units according to the terms of the contract.

## II. Analysis

At issue in this appeal is whether the Seventh Amendment of the United States Constitution entitles Fischer to a jury determination of a reasonable price under the extended term of the contract for the Tilt C units. Fischer argues that the relief it seeks is

3

legal in nature, requiring a trial by jury if properly requested.  In response, GE argues that Fischer's claims sound in equity and do not accord Fischer the right to a jury trial.  We review de novo the trial court's decision to strike Fischer's jury demand.  See Manning v. United States, 146 F.3d 808, 811 (10th Cir. 1998).

The Seventh Amendment provides that "[i]n suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved . . . ."  U.S. Const. amend. VII.   The Supreme Court has interpreted the Seventh Amendment as requiring trial by jury if the action involves "rights and remedies of the sort traditionally enforced in an action at law, rather than in an action in equity or admiralty."  Pernell v. Southall Realty, 416 U.S. 363, 375 (1974).   The Seventh Amendment right to a jury trial applies not only to common law causes of action, but also to statutorily created ones.  See City of Monterey v. Del Monte Dunes, 119 S.Ct. 1624, 1638 (1999).

To resolve whether the right of trial by jury attaches to a particular cause of action, we apply a two-step analysis.  See id.  First, we determine whether the cause of action was tried at law in 1791, or is analogous to such a cause of action.   Markman v. Westview Instr., Inc., 517 U.S. 370, 376 (1996).   "To determine whether a statutory cause of action is more analogous to cases tried in courts of law than to suits tried in courts of equity or admiralty, we examine both the nature of the statutory action and the remedy sought."  Feltner v. Columbia Pictures Television, Inc., 523 U.S. 340, 348 (1998).  The nature of the remedy is the more important factor.  See Granfinanciera, S.A. v.

4

Nordberg, 492 U.S. 33, 42 (1989).  Second, "[i]f the action in question belongs in the law category, we then ask whether the particular trial decision must fall to the jury in order to preserve the substance of the common-law right as it existed in 1791."  Del Monte Dunes, 119 S.Ct. at 1638 (internal citations omitted).

Fischer's pursuit of this action under the Declaratory Judgment Act does not alter Fischer's rights under the Seventh Amendment.  See Manning, 146 F.3d at 811.  The Declaratory Judgment Act does not create a right to a jury trial, but merely preserves the right where one already exists.  Id.  Declaratory relief may be legal or equitable depending on the "basic nature of the underlying issues."  United States v. New Mexico, 642 F.2d 397, 400 (10th Cir. 1981).

## A. Nature of the Statutory Action

Applying these principles, we look first to the nature of § 4-2-305, which provides as follows:

> (1) The parties if they so intend can conclude a contract for sale even though the price is not settled.  In such a case the price is a reasonable price at the time for delivery if:
>
> > (a) Nothing is said as to price; or
> > (b) The price is left to be agreed by the parties and they fail to agree . . .

Colo. Rev. Stat. § 4-2-305.  At the time the Seventh Amendment was adopted no parallel action to § 4-2-305 existed.  Indeed, at common law an agreement omitting the price and failing to provide a definite method for ascertaining a price was void and unenforceable.  See Boatright v. Steinite Radio Corp., 46 F.2d 385, 388 (10th Cir. 1931); Red Wing Shoe

5

Co. v. Shepherd Safety Shoe Corp., 164 F.2d 415, 418 (7th Cir. 1947). Today, however, § 4-2-305 salvages an agreement where the parties fail to include a price, *if* the parties intend to be bound. Neither party here contends that they did not intend to be bound. Therefore, the parties have an enforceable contract under § 4-2-305.

Determining whether a contract action would have historically been tried to a jury is "difficult and even at times impossible." 5 Arthur L. Corbin, Corbin on Contracts, § 1103 (1964). Generally, breach of contract actions claiming monetary damages were tried to a jury. See Chauffeurs, Teamsters, and Helpers Local No. 391 v. Terry, 494 U.S. 558, 569-70 (1990). By contrast, actions seeking reformation of a contract were tried to the judge, see 9 Wright & Miller, Federal Practice and Procedure Civil 2d, § 2316 (1982), as were actions seeking specific performance of a contract. Id. at § 2309. The foregoing suggests that the nature of the remedy that the plaintiff seeks in a contract action determines whether the plaintiff is entitled to a jury trial. Thus, we must determine whether the remedy sought by Fischer under § 4-2-305 is legal or equitable in nature.

### B. Remedy Sought

The remedy in this case is difficult to pigeonhole into one distinct category. The posture of the case as a declaratory action further complicates the analysis. Fischer argues that the claim is a straightforward one for money damages. The case is not so simple. Prior to filing suit, Fischer refused to perform under the extended term of the

6

contract. As a result, Fischer had yet to suffer a loss when it filed the declaratory action. Therefore, one of the traditional purposes associated with legal relief, compensation for damages does not apply. See Feltner, 523 U.S. at 352 (1998) (traditional purposes of legal relief include compensation and punishment); see also 5 Corbin, *supra* § 990 (damages "nearly always award reparation in money for harm already done"). Such a situation is not unusual in a declaratory action, however, because normally the purpose of such a cause is to obtain relief before a wrong has been committed or a loss incurred. See 5 Corbin *supra* § 991.

In contrast, GE attempts to characterize the remedy as one of reformation of a contract.[1] Reformation is an "equitable remedy used to reframe written contracts to reflect accurately [the] real agreement between contracting parties when, either through mutual mistake or unilateral mistake coupled with actual or equitable fraud by the other party, the writing does not embody the contract as actually made." Black's Law Dictionary 1281 (6th ed. 1990); see also Mutual of Omaha Ins. Co. v. Russell, 402 F.2d 339, 344 (10th Cir. 1968). GE argues that Fischer is actually seeking reformation of the

---

[1] GE also attempts to characterize the relief as specific performance because a reasonable price under the extended term of the contract has value to Fischer only if the parties perform. Fischer's claim cannot be characterized as one that seeks specific performance, however, because the record indicates that GE never breached the contract or indicated that it would not perform under the extended term of the contract. Indeed, GE had placed an order for 75 additional Tilt C units prior to the initiation of this lawsuit. Furthermore, GE's counterclaim for specific performance does not deprive Fischer of its right to a jury trial on any legal claims. See Dairy Queen v. Wood, 369 U.S. 469, 472-73 (1962).

7

contract because Fischer introduced evidence of Fischer's own erroneous expectations of higher gross margins and miscalculations regarding initial pricing of the goods when Fischer entered into the original contract.

GE's argument misses the mark. The current dispute is over the extended term contract, not the original contract. The extended term contract cannot be rewritten to express the parties' actual intent regarding the price, because the parties failed to reach any agreement as to price. What Fischer asked the district court to do was not to reform the contract to reflect what the parties actually intended, but to set a reasonable price. In order for the district court to do so, Fischer introduced evidence regarding a reasonable price. Fischer introduced the evidence of false assumptions and miscalculations in the original pricing scheme to show that the pricing provisions in the original contract should not just be grafted onto the extended term contract. The introduction of this evidence did not transform the remedy sought into reformation of the contract.[2]

In arguing that the remedy should be characterized as reformation or other equitable relief, GE relies heavily on a Nebraska district court case, Burlington Northern R.R. Co. v. Nebraska Public Power District, 931 F.Supp. 1470 (D. Neb. 1996), which, importantly, does *not* involve setting a reasonable contractual price under U.C.C.

---

[2] We also note that in cases involving a unilateral mistake, the mistake must be coupled with some sort of fraud by the other party in order to justify the extraordinary remedy of reformation of the contract. See id. at 344-45. Neither party has alleged misrepresentations or fraud by GE.

§ 2-305.[3]  In Burlington, both parties sought declaratory relief regarding the pricing mechanism in an extremely complex contract for the transportation of coal.  Id. at 1473. Because the term of the contract was for several years, the contract provided two methods to adjust the price if a change in circumstances warranted an adjustment, including a method to "amend" the contract.  Id. at 1480.  In other words, the contract contained a specific method for setting a new contract price.  If the parties could not agree on whether an adjustment was warranted, or on an amended price, the contract provided that a declaratory action could be brought to decide the disputes.  Id. at 1482.  The district court characterized the suit as "most like a suit for specific performance of a contract coupled with a suit for reformation of a contract."  Id. at 1483.

Burlington differs significantly from this case, however, because the contract in Burlington provided a method for amending the contract.   Unlike the present case, the parties in Burlington contemplated that a reformation of the contract might be necessary. The contract provided that "unforeseen changes in circumstances in the future might cause the Effective Rate to no longer reflect the parties' intentions" and thus "the parties desire to provide a procedure for amending" the contract.  Id. at 1483.  The district court equated these provisions with reformation of the contract.  Id.  While that analysis may be quite sound, we have no parallel term providing for amendment of the present contract.

_____

[3] No party cites to, nor could the court find, an opinion by any court expressly addressing the precise issue raised in this case, that is, whether a right to a jury attaches under § 2-305 of the U.C.C.

9

The district court's decision in <u>Burlington</u> was also based on the complexity of the task of determining a price.[4]  The district court was not only required to determine the "reasonable cost" to the defendant, but was also required to interpret numerous terms in the contract.[5]  <u>Id</u>.  The district court characterized the nature of the undertaking as tantamount to "plenary interpretation" of the contract, a task traditionally left to judges. See <u>id</u>. (quoting <u>Markman</u>, 370 U.S. at 381).

Unlike <u>Burlington</u>, our case is not dependent on, nor does it involve, interpreting a plethora of contractual terms.   Determining the reasonable price of the Tilt C units may require consideration of the parties course of dealing, course of performance, and the fair market value of the goods.  1 J. White and R. Summers, Uniform Commercial Code, § 3-8, (1995).   The determination may also require consideration of production costs, including materials and labor.  See <u>Kuss Machine Tool & Die Co., Inc. v. El-tronics</u>, 143 A.2d 38, 40 (Penn. 1958).   These determinations, however, do not require a wholesale interpretation of the terms of the contract.  See <u>Markman</u>, 370 U.S. at 381-82 ("judges not juries, ordinarily construe written documents").  The determination of a reasonable price

---

[4] It took the district court six days of hearings just to clarify the claims at issue in that case.

[5]  For example, the district court would have to interpret contract terms including the "Base Rate," the "Effective Rate,"(which required the construction of a formula set forth in the contract) "reasonable profit, assuming honest and efficient management," "costs directly related to the services provided by" the plaintiff,  "shall neutralize the effects of inflation" and other terms "which have no plain meaning save for the meaning that judicial construction provides." <u>Burlington</u>, 931 F.Supp. at 1484.

is a relatively straightforward factual inquiry which does not involve the type of "highly discretionary calculations" traditionally performed by judges. Tull, 412 U.S. at 427 (determining amount of civil penalties under Clean Water Act involved "highly discretionary calculations that take into account multiple factors," and, as such, was task best left to judges). For these reasons, we find GE's reliance on Burlington unpersuasive.

After considering the parties' arguments regarding legal versus equitable relief, it is apparent that this case does not fit neatly into either category. In the hopes of resolving the dilemma, we next consider how this case might have come to the court absent declaratory judgment procedures. See 9 Wright & Miller, Federal Practice and Procedure, Civ. 2d § 2313. Without a declaratory judgment action, Fischer could have delivered the Tilt C units and, upon GE's refusal to pay the demanded price, sued GE for breach of contract seeking monetary damages in the amount of a reasonable price for the goods. In such a case, Fischer would have been entitled to have a jury determine damages. See Terry, 494 U.S. at 569-70 (unless "restitutionary" or "incidental to or intertwined with injunctive relief," monetary awards constitute legal relief). In the alternative, Fischer could have delivered the Tilt C units, invoiced at a price GE believed was unreasonable, and GE could have paid the invoice price and then sued Fischer for breach of contract. In such a case, the damages would be the difference between the invoice price and the contract price, which § 4-2-305 provides is a reasonable price. Likewise this claim for monetary damages would be triable to a jury.

If Fischer failed to deliver the Tilt C units, GE could cover and sue Fischer for breach of contract, seeking the difference between the contract price, as set by § 4-2-305 as a reasonable price, and the cover price, as well as any incidental or consequential damages associated with effecting cover. See Colo. Rev. Stat. § 4-2-712. Such a suit for money damages would be tried to a jury. If GE chose not to cover, GE could sue for breach of contract seeking the difference between the market price at the time of the breach and the contract price, i.e., a reasonable price, plus any consequential or incidental damages. See Colo. Rev. Stat. § 4-2-713. Again, this action for money damages would be tried to a jury. Finally, if GE was unable to cover because the goods were unique, GE could sue under Colo. Rev. Stat. § 4-2-716 for specific performance for delivery of the Tilt C units. Because specific performance is an equitable remedy, the case would not be tried to a jury. In a suit for specific performance, a determination of a reasonable price would be not necessary to the disposition of the claim.[6] As illustrated above, in all the

---

[6] Although in a suit by the buyer for specific performance of a contract, the seller could file a counterclaim seeking a declaratory judgment to determine a reasonable price for the goods, setting a reasonable price would not be necessary to a determination of whether the buyer was entitled to specific performance. The focus of such an inquiry is the uniqueness of the goods, not the price to be paid for them. See Colo. Rev. Stat. § 4-2-716. The seller's counterclaim in such a case would place the parties in a similar position to the present case, that is, a declaratory judgment to determine a reasonable price. This is so because no duty to pay for the goods would arise until the goods were delivered; therefore, no breach of contract by the buyer would arise until after delivery and after a refusal by the buyer to pay the seller's invoiced price. Thus, at the time the seller brings the counterclaim, the seller would not have suffered a loss and would be seeking prospective relief. Following our analysis above, such a counterclaim would

(continued...)

12

scenarios where U.C.C. § 2-305 can come into play, the relief sought is legal in nature. See Terry, 494 U.S. at 569-70. Accordingly, because Fischer's statutory suit, if not brought as a declaratory action, would sound in contract and seek legal relief, we conclude that the § 4-2-305 suit is an action at law. Cf., Johnson v. Fidelity & Casualty Co. of N.Y., 238 F.2d 322, 324-25 (8th Cir. 1956) (insurer entitled to jury trial in declaratory judgment action to determine coverage under insurance policy); Hargrove v. American Cent. Ins. Co., 125 F.2d 225, 228 (10th Cir. 1942) (same).

## C. Issue for Jury

Having determined that Fischer's § 4-2-305 statutory action was an action at law, we next consider whether the particular issue was proper for determination by the jury. Specifically, we must decide whether the determination of a reasonable price must be resolved by the jury in order to "preserve the right to a jury's resolution of the ultimate dispute." Markham, 517 U.S. at 377. To do so, we look to history to determine whether the issue or analogous ones, "were decided by judge or by jury in suits at common law at the time the Seventh Amendment was adopted." Del Monte Dunes, 119 S.Ct. at 1643. If history provides no clear answer, we look to "precedent and functional considerations." Id.

In this case, we can find no precise analogue for this issue at common law because

---

[6](...continued)
arise in contract and seek legal relief.

13

the courts were not in the business of determining a price if the parties failed to include the price term in the agreement.  See Boatwright, 46 F.2d at 388.  A similar issue arose, however, in quasi-contract[7] actions where, "after goods have actually been delivered and accepted, . . . the defendant is bound to make reasonable compensation therefor, whether the agreement under which the benefit was received was too indefinite for enforcement or not." 1 Corbin, *supra* § 99.  Claims for quasi-contract arose and developed under the common law writ of assumpsit and, as a result, were historically brought in the courts of law.  See 1 Dan B. Dobbs, Law of Remedies § 4.2(3) (1993); see also Austin v. Shalala, 994 F.2d 1170, 1176-77 (5th Cir. 1993) (quasi-contract action requires jury trial because it falls under the common law writ of general assumpsit, a legal action at common law).  Generally, in quasi-contract actions courts have submitted the question of the value of the goods or services to the jury.  District of Columbia v. Campbell, 580 A.2d 1295, 1303 (D.C. App. 1990) (question of value of services in quantum meruit action submitted to jury); Baker v. Estate of Mary Brown, 294 S.W.2d 22, 27 (Mo. 1956) (same); Rodgers v. Levy, 199 S.W.2d 79, 81 (Mo. Ct. App. 1947) (reasonable value of labor and materials submitted to jury in quantum meruit suit); Paper Stylists, Inc. v. Fitchburg Paper Co., 9 F.R.D. 4, 5 (N.D. N.Y. 1949) (right to jury in quasi-contract action seeking money

---

[7] Quasi-contract requires: (1) the plaintiff to confer a benefit to the defendant; (2) that defendant has knowledge of or acquiesces to; and (3) by allowing the defendant to retain the benefit without payment, inequity would result.  See DCB Const. v. Central City Dev. Co., 965 P.2d 115, 119 (Colo. 1998).

14

damages); <u>Foulger v. McGrath</u>, 95 P. 1004, 1005 (Utah 1908) (reasonable value of labor and material used to construct buildings properly submitted to jury on theory of quantum meruit); <u>Toole v. Bearce</u>, 39 A. 558 (Me 1898) (reasonable price was question for jury to determine in quantum meruit action); <u>but</u> <u>see</u> <u>DCB Const. v. Central City Devel. Co.</u>, 940 P.2d 958, 961-62 (Colo. App. Ct. 1996) (quasi-contract claim for unjust enrichment tried to judge).   Thus, the comparison with quasi-contract actions supports our conclusion that a reasonable price under § 2-305 is a question for the jury.   We next turn to precedential and functional considerations.

A number of courts have submitted the question of a reasonable price under U.C.C. § 2-305, and similar U.C.C. provisions, to the jury, providing further support for the conclusion that determining a reasonable price is properly a jury question.  <u>See</u> <u>Havird Oil Co., Inc. v. Marathon Oil Co., Inc.</u>, 149 F.3d 283, 290 (4th Cir. 1998) (question of whether seller's price was reasonable was submitted to jury, but verdict for the plaintiff set aside by court because of insufficient evidence of unreasonableness); <u>Adams v. G.J. Creel & Sons, Inc.</u>, 465 S.E.2d 84, 86 (S.C. 1995) (question of reasonable price is generally for jury); <u>Grumman Credit v. Rivair Flying Service</u>, 845 P.2d 182, 186 (Okla. 1992) (question of whether sale was commercially reasonable under U.C.C. § 9-504 submitted to jury); <u>W.I. Snyder Corp. v. Caracciolo</u>, 541 A.2d 775 (Pa. Super. Ct. 1988) (whether seller made a reasonable effort to resell goods at a reasonable price is question for jury); <u>Landrum v. Devenport</u>, 616 S.W.2d 359, 362 (Tex. Ct. App. 1981) (where

15

buyer and seller of limited edition automobile did not specify price, question of reasonable price was for the jury); TCP Ind., Inc. v. Uniroyal, Inc., 661 F.2d 542, 549 (6th Cir. 1981) (determination of whether price set by seller was commercially reasonable was question for jury); Standard Coal Co. v. Stewart, 269 P. 1014 (Utah 1928) (pre-UCC case holding that reasonable price is question for jury);

Finally, we look to functional considerations. In actions at law "predominantly factual issues are in most cases allocated to the jury." Del Monte Dunes, 119 S.Ct. at 1643; see also Baltimore & C. Line v. Redman, 295 U.S. 654, 657 (1935). Allowing the jury to decide factual issues preserves "the right to a jury's resolution of the ultimate dispute." Del Monte Dunes, 119 S.Ct. at 1644 (internal quotations omitted). The issue in the present case, the reasonable price of goods, is a "question of fact, not one of law." 1 Corbin *supra* § 99; see also Great Western Distillery Products, Inc. v. Wathen Distillery Co., 74 P.2d 745, 747 (Cal. 1937) ("a reasonable price is a question of fact dependent on the circumstances of each particular case"). Evidence submitted to determine a reasonable price may include the parties' course of dealing, course of performance, usage of trade, or the fair market value of the goods, or a formula agreed upon by the parties. See 1 White and Summers, Uniform Commercial Code § 3-8 (1995). Consideration of this evidence does not require a judge to construe a contract. See Markman, 517 U.S. at

16

381. Thus, we see no reason to remove this question from the province of the jury.[8]

In light of the relevant historical, precedential and factual considerations, we conclude that the question of a reasonable price for goods under § 4-2-305 is a question for the jury. Accordingly, the district court erred by striking Fischer's jury demand.

### III. Advisory Jury

Even though the district court concluded that Fischer was not entitled to a jury trial, the district court exercised its discretion under Fed. R. Civ. P. 39(c) and tried the case with an advisory jury. Now that we have concluded that the issue of a reasonable price should have been submitted to the jury, we must determine how the district court should proceed on remand. Fischer does not request a new trial. Instead, Fischer argues that the verdict of the advisory jury should be substituted for the district court's judgment. We conclude that this case must be remanded for a new trial.

Fischer timely requested a trial by jury, and we hold today that Fischer was entitled under the Seventh Amendment to a trial by jury. An advisory jury is not the equivalent of

---

[8] The U.C.C. does not suggest a different result. The official comment to § 2-201 states that the "trier of fact" determines a reasonable price. Nothing in § 2-305 conflicts with that statement. Section 2-305 does not include the term "by the court" in reference to the setting of a reasonable price. In contrast, the drafters expressly instructed in § 2-302(1) that the court, as a matter of law, determines whether a contract was unconscionable. Thus, where the U.C.C. drafters so intended, they expressly provided that an issue was for the court and not the jury. Therefore, under the maxim of statutory construction *expressio unius est exclusio alterius*, we assume that had the drafters intended to include "by the court" in § 2-305, they would have done so. See United States v. Oberle, 136 F.3d 1414, 1423-24 (10th Cir. 1998).

17

a Seventh Amendment jury. See Parklane Hosiery Co. v. Shore, 439 U.S. 322, 337 n.24 (1979) ("an advisory jury . . . would not in any event have been a Seventh Amendment jury"); see also 8 James Wm. Moore, Moore's Federal Practice, § 39.40[4] (1999) (use of advisory jury does not satisfy a party's constitutional right to a jury trial). Therefore, we may not replace Fischer's Seventh Amendment right to a jury trial with an advisory jury's verdict. See Pradier v. Elespuru, 641 F.2d 808, 811 (9th Cir. 1981).

IV. Conclusion

For the foregoing reasons, the judgment of the district court is REVERSED and the case REMANDED for a NEW TRIAL.[9]

---

[9] The respective motions of the parties for leave to file supplemental briefs are hereby GRANTED.