PHILIP R. MARTINEZ, UNITED STATES DISTRICT JUDGE
On this day, the Court considered Plaintiff State of Texas and Counter-Defendant Ken Paxton, in his official capacity as Texas Attorney General's [hereinafter, collectively, "Texas" or "the State"] "Brief Regarding Defendants' Jury Demand" (ECF No. 159) [hereinafter "Texas Brief"], filed on December 14, 2018, and Defendants/ Counter-Plaintiffs Ysleta del Sur Pueblo, the Tribal Council, and the Tribal Governor Michael Silvas or his successor's [hereinafter, collectively, "Pueblo" or "the Tribe"] "Brief in Support of Jury Demand" (ECF No. 161) [hereinafter "Pueblo Brief"], filed on December 28, 2018, in the above-captioned cause.[1] After due consideration, *763 the Court is of the opinion that the Tribe's jury demand should be stricken and that the March 4, 2019, jury selection and trial in this case should be reset as a bench trial, for the reasons that follow.
I. LEGAL STANDARD
A court must allow a properly demanded jury trial unless the court determines that no federal right to a jury trial exists. See Fed. R. Civ. P. 39(a)(2) ("When a jury trial has been demanded under Rule 38, the action must be designated on the docket as a jury action. The trial on all issues so demanded must be by jury unless ... the court, on motion or on its own, finds that on some or all of those issues there is no federal right to a jury trial.")
The Seventh Amendment provides that "[i]n suits at common law, where the value in controversy shall exceed twenty dollars, the right of a trial by jury should be preserved." U.S. CONST. amend. VII. "Maintenance of the jury as a fact-finding body is of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right to a jury trial should be scrutinized with the utmost care." Beacon Theatres, Inc. v. Westover , 359 U.S. 500, 501, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959) (quoting Dimick v. Schiedt , 293 U.S. 474, 486, 55 S.Ct. 296, 79 L.Ed. 603 (1935) ).
The Supreme Court has developed a two-part test to determine whether a party is, pursuant to the Seventh Amendment, entitled to a jury trial. The Court must: (1) compare the claims at issue to "18th-Century actions brought in the courts of England prior to the merger of the courts of law and equity" and (2) determine whether the remedies sought are legal or equitable in nature. See, e.g., Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry , 494 U.S. 558, 564, 110 S.Ct. 1339, 108 L.Ed.2d 519 (1990). "The second stage of this analysis is more important than the first." Granfinanciera, S.A. v. Nordberg , 492 U.S. 33, 42, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989).
II. ANALYSIS
In this section, the Court first considers what sort of claim from 18th-Century English law might be most analogous to the case at hand. The Court determines that the answer is debatable-as no historical cause of action is directly on point-but an action for specific performance appears to be the closest fit. Then, the Court considers the more significant question regarding whether the remedies sought are legal or equitable in nature. Ultimately, the Court determines that the remedies sought are equitable and that the Tribe's demand for a jury trial should be stricken.
A. Comparison of the Claims to 18th-Century Actions
First, the Court considers whether the claims at issue would be brought in common law or Chancery (i.e., a court of equity) in 18th-Century England prior to the merger of the courts of law and equity. In this case, Texas claims that the Tribe is violating the Restoration Act[2] and seeks *764 an injunction to halt bingo operations on the Tribe's Reservation. Pl. State of Texas's First Am. Compl. for Declaratory and Inj. Relief, Aug. 15, 2017, ECF No. 8. The Tribe, in turn, asserts that Texas's actions violate the Equal Protection Clause. Pueblo Defs.' First Am. Counterclaim, Sept. 7, 2019, ECF No 21.
Of course, no cause of action existed in 18th-Century England regarding a State-initiated lawsuit seeking to enjoin gaming operations on Tribal lands pursuant to a federal compact and the State's gaming law. And no cause of action existed regarding whether the enforcement of certain gaming laws violated the constitutional rights of indigenous persons. Nonetheless, the Court considers what might have been the most analogous cause of action.
1. Specific Performance
This case's closest historical analogue appears to be an action for specific performance. Specific performance actions were brought in Chancery when damages were "wholly inadequate for the purposes of justice" as a remedy in contract cases. JOSEPH STORY, COMMENTARIES ON EQUITY JURISPRUDENCE, VOL. II , 28-29 (4th ed. 1892). Whether specific performance was appropriate depended on the parties' primary objective in their agreement. Id. at 29-30.
The Restoration Act is, at its core, a compact between the Tribe, the State, and the federal government. See Ysleta del Sur Pueblo v. State of Tex. , 36 F.3d 1325, 1335 (5th Cir. 1994) (stating that "the Tribe has already made its 'compact' with the state of Texas, and the Restoration Act embodies that compact"). In part, the Tribe has agreed that "[a]ll gaming activities which are prohibited by the laws of the State of Texas are hereby prohibited on the reservation and on lands of the tribe." Restoration Act § 107(a). Texas seeks to enforce its gaming laws pursuant to § 107 of the Restoration Act. Thus, Texas is effectively seeking specific performance of a contract-the compact embodied in the Restoration Act.
Furthermore, like in a specific performance action brought in Chancery, damages are inadequate in this case for two reasons. First, and most importantly, the only remedy afforded by the Restoration Act is a federal suit seeking an injunction, so damages may not be sought and are not recoverable. Id. § 107(c). Second, the State's alleged interest in enforcing its laws is not primarily a financial interest. Thus, the Court is of the opinion that this case's closest historical analogue is an equitable action seeking specific performance on an agreement.
2. Public Nuisance
The Tribe contends that this claim is most similar to a public nuisance, which was a claim brought in the courts of law.[3] Pueblo Br. 4-5. To be clear, the Texas Civil Practice and Remedies Code, prohibits gambling as a "common nuisance." See TEX. CIV. PRAC. & REM. CODE § 125.005; Pl. State of Texas's First Am. Compl. for Declaratory and Inj. Relief 6-7. However, the Court is not tasked with considering whether the State of Texas has outlawed some type of action as a common nuisance. Rather, the Court considers whether this claim is analogous to a public nuisance in 18th-Century England. See United States v. Wonson , 28 F. Cas. 745, 750 (C.C.D. Mass. 1812) (Story, J.) ("Beyond all question, the common law here alluded to [in the Seventh Amendment] is not the common *765 law of any individual state, (for it probably differs in all), but it is the common law of England, the grand reservoir of all our jurisprudence.").
In 18th-Century English law, a public nuisance was "an act or omission 'which obstructs or causes inconvenience or damage to the public in the exercise of rights common to all Her Majesty's subjects.' "[4] Tull v. United States , 481 U.S. 412, 420, 107 S.Ct. 1831, 95 L.Ed.2d 365 (1987) (citing WILLIAM L. PROSSER, LAW OF TORTS 583 (4th ed. 1971) ). In England, any activity, including gambling, "that ran the risk of a breach of the peace or public morals could be dealt with by the courts as a public nuisance." See CORNELL LAW SCHOOL, DEVELOPMENT OF THE LAW OF GAMBLING : 1776-1976 3 (1977). Thus, it appears that operating a gambling house could be a public nuisance under 18th-Century common law if the disruption caused by the facility would harm the community.
Significantly, the claims here do not concern a traditional breach of the peace. The State does not contend that Pueblo gaming facilities cause a significant disruption to the community or otherwise undermine a sense of public order.[5] See Pl. State of Texas's First Am. Compl. For Declaratory and Inj. Relief.
Further, it is unclear whether the allegations are tantamount to a breach of public morals. Texas claims that its citizens, via the State legislature, have expressed a political preference that the gaming at issue should be illegal. Pl. Texas's Mot. for Summ. J. & Permanent Inj. 18, Nov. 14, 2018, ECF No. 146. Although the Court is unaware of any historical support demonstrating that a generalized impairment of voter preference would constitute a public nuisance, it is at least possible that this impairment is comparable to a breach of public morals. This idea-that an act contrary to political preference undermines the community's sense of morality-appears to be the best support for the proposition that this case is most analogous to a public nuisance.
In sum, it is plausible that public nuisance is an analogous cause of action if the impairment of voter preference may be characterized as a breach of public morals. However, this case is not straightforwardly able to be characterized as a public nuisance claim.
3. Criminal
Alternatively, the Tribe appears to contend that this case is akin to a criminal or quasi-criminal action because the gaming provisions that Texas seeks to enforce are found in the Texas Penal Code and because public nuisance cases originated as criminal cases. Pueblo Br. 4. The Tribe acknowledges that the remedies sought by the State are purely civil. Id.
In England, the difference between civil law and criminal law "turn[ed] on the difference between two different objects which the law seeks to pursue-redress or punishment." WILLIAM GELDART, ELEMENTS OF ENGLISH LAW 232 (1911). "[I]n the case of crimes, the main object of the law is to punish the wrongdoer; to give him and others a strong inducement not to commit *766 the same or similar crimes, possibly to reform him, possibly to satisfy the public sense that wrong-doing ought to meet with retribution." Id. As is true in United States today, in England "[i]n some cases, ... the same act is both a crime and a civil wrong." Id. at 233. If an act may be either, then "civil and criminal proceedings ... are quite distinct." Id. at 234.
In this case, criminal charges are not brought, and criminal punishment is not sought. Accordingly, although the State asserts that the Tribe's activity runs contrary to Texas's criminal gambling laws, the case is not best cast as a criminal action.
4. Concurrent Jurisdiction Dependent on Remedies
Historically, courts of common law and Chancery had concurrent jurisdiction over many claims, and the proper place for a plaintiff to bring his claims depended on the type of relief sought. Patrick Devlin, Jury Trial of Complex Cases: English Practice at the Time of the Seventh Amendment , 80 COLUM. L. REV. 43, 54 (1980). If a plaintiff could not get adequate relief from the courts of law, he could go to Chancery and seek an equitable remedy-e.g., an injunction. Id. When the remedies sought were purely equitable, a case was required to be brought in Chancery. JOHN N. POMEROY, A TREATY ON EQUITY JURISPRUDENCE, VOL. I , 196 (2d ed. 1892) ("In a word, all cases in which the purely equitable remedies are granted fall within the exclusive jurisdiction of equity."). Accordingly, the first question that the Court must consider (how this case would have been brought historically) may be answered by the second (whether the remedy is legal or equitable).
Although the Court is of the opinion that specific performance appears to be the closest fit, whether this action would better be categorized as a public nuisance or an action for specific performance is debatable. Because no historical cause of action clearly encompasses the claims here, and because 18th-Century jurisdiction was sometimes determined by the remedy sought, the Court determines that the second question regarding remedies should control its decision. See Tull , 481 U.S. at 421, 107 S.Ct. 1831 ("We need not rest our conclusion on what has been called an 'abstruse historical' search for the nearest 18th-century analog.... [C]haracterizing the relief sought is '[m]ore important' than finding a precisely analogous common-law cause of action in determining whether the Seventh Amendment guarantees a jury trial." (quoting Ross v. Bernhard , 396 U.S. 531, 538 n.10, 90 S.Ct. 733, 24 L.Ed.2d 729 (1970) and then Curtis v. Loether , 415 U.S. 189, 196, 94 S.Ct. 1005, 39 L.Ed.2d 260 (1974) ) ).
B. Whether the Remedies Sought are Legal or Equitable
Accordingly, the Court considers whether the remedies sought are legal or equitable in nature. This question is more important than the first. Granfinanciera , 492 U.S. at 42, 109 S.Ct. 2782. As previously discussed, the Court is of the opinion that whether the demand for a jury is proper should turn on whether the remedies sought are legal or equitable. Here, Texas seeks an injunction and declaratory judgment, and the Tribe seeks a declaratory judgment. Ultimately, the Court determines that all remedies sought in this litigation are equitable.[6]
*767 1. Injunction
In this case, the State seeks an injunction to halt the Tribe's bingo operations. Historically, lawsuits seeking an injunction were "peculiar to the Courts of Equity." JOSEPH STORY, COMMENTARIES ON EQUITY JURISPRUDENCE, VOL. II , 199 (4th ed. 1846). Similarly, in modern-day suits, an injunction is considered to be equitable relief. Great-W. Life & Annuity Ins. Co. v. Knudson , 534 U.S. 204, 211, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002) ("In any event, injunction is inherently an equitable remedy."); United States v. Reddoch , 467 F.2d 897, 899 (5th Cir. 1972) ("This being a suit for injunctive relief, not one at common law, there was no right to a jury trial." (citing United States v. Louisiana , 339 U.S. 699, 701, 70 S.Ct. 914, 94 L.Ed. 1216 (1950) ).
The Tribe contends that the remedies sought by the State are both legal and equitable in nature. Pueblo Br. 5. The Tribe provides no support for its claim that an injunction may be recast as a "legal" remedy. See itation index="37" url="https://cite.case.law/citations/?q=94%20L.%20Ed.%201216">id. Instead, the Tribe focuses on its belief that a "pivotal issue of fact"[7] exists in this case. Id. at 6. According to the Tribe, because there is a pivotal issue of fact, the case should be tried before a jury. Id. The Tribe's primary support for its contention is a Tenth Circuit case, United States v. New Mexico . There, the United States sued the State of New Mexico to recover a state tax that was assessed against a federal contractor but ultimately passed on to the United States. United States v. New Mexico , 642 F.2d 397, 398 (10th Cir. 1981). A key question in the case was whether radio telescope antennas were similar enough to radio towers as to lead to a tax liability. Id. at 400. The United States sued seeking declaratory and injunctive relief as to future demands for taxes as well as recovery of more than $ 127,000, which it had previously paid in taxes. Id. at 398. The district court denied the right to a jury trial, and the Tenth Circuit reversed the lower court's decision because it determined that the case presented both legal and equitable issues. Id. at 398, 400.
The Tenth Circuit determined that the demand for monetary relief was akin to a tax refund suit, which is most properly categorized as a legal claim. See itation case-ids="1197242" index="42" url="https://cite.case.law/f2d/642/397/#p398">id. at 400-01. On the other hand, the injunction was an equitable remedy. Id. at 400 (stating that "the determination of the legal question"-whether the tax should be refunded-"resolves the right to equitable relief"-that is, whether an injunction should be issued against future taxes).
Contrary to the Tribe's assertion, the Tenth Circuit's conclusion did not focus on whether the case presented a central issue of fact. The tax recovery claim was not legal merely because a fact issue existed; rather, the claim was legal because it was at its core a claim for money damages. Id. at 401 ("We are persuaded that the right of a taxpayer to a jury trial in refund cases is rooted in the common law and was preserved by the Seventh Amendment."). Accordingly, the case that the Tribe relies on does not support its *768 jury demand. Importantly, issues of fact may be decided by a judge when no right to a jury trial exists. See Fed. R. Civ. P. 52(a) (discussing procedural requirements for an action tried on the facts without a jury). Thus, no right to a jury trial is established simply because a fact issue exists.
2. Declaratory Judgments
Declaratory judgments are sought by both parties: the State seeks a declaration that the bingo operations are illegal, and the Tribe seeks declarations that the operations are legal and that this suit violates the Equal Protection Clause. Pl. State of Texas's First Am. Compl. for Declaratory and Inj. Relief 8; Pueblo Defs.' First Am. Counterclaim 23.
The Declaratory Judgment Act itself confers no right to a jury trial; whether this right is afforded depends on the underlying claim. See, e.g. , Marseilles Hydro Power, LLC v. Marseilles Land & Water Co. , 299 F.3d 643, 649 (7th Cir. 2002) ; Fischer Imaging Corp. v. General Elec. Co. , 187 F.3d 1165, 1168 (10th Cir. 1999). Because an injunction is an equitable remedy, the State's request for a declaration accompanying the injunction is equitable based on the underlying claim. Further, the Court determines that the Tribe's counterclaim also pursues an equitable remedy. In seeking a declaration pursuant to the Equal Protection Clause, the Tribe does not-and cannot-seek damages from the State. Kentucky v. Graham , 473 U.S. 159, 160, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) ("[T]he Eleventh Amendment bars a damages action against a State in federal court, a bar that remains in effect when state officials are sued for damages in their official capacity."). Accordingly, the actions underlying all claims for declaratory relief in this case are equitable and do not carry a Seventh Amendment right to a jury trial.
III. CONCLUSION
Having considered historical analogues and the remedies sought in this case, the Court determines that no right to a jury trial exists.
Accordingly, IT IS ORDERED that jury selection and trial in this case is RESET as a BENCH TRIAL , which will remain scheduled on March 4, 2019, at 9:00 a.m. Mountain Time.

The parties' briefs were filed in response to the Court's "Order Requiring Supplemental Briefing" (ECF No. 155), filed on December 7, 2018.

The Restoration Act restored a federal trust relationship and federal assistance to the Tribe. See generally Ysleta del Sur Pueblo and Alabama and Coushatta Indian Tribes of Texas Restoration Act, Pub. L. No. 100-89, 101 Stat. 666 (1987). The Act also delineated certain rights, responsibilities, and limitations regarding the relationships between the Tribe, State, and federal government. Id. One section of the Restoration Act-§ 107(c)-discusses the extent to which the Tribe is subject to Texas gaming law and provides for how the State may enforce violations of its gaming law. Id. § 107(c).

The State's brief does not address how the claim at hand would have historically been brought.

At common law, public nuisance was traditionally indicted as a crime, and no private remedy existed. William Blackstone, Commentaries on the Laws of England , Vol. II 177 (1830).

The Tribe also asserts that the operations at Speaking Rock have not caused community complaints. See Pueblo Defs.' Resp. to Texas's Mot. for Summ. J. and Permanent Inj. 17-18, Dec. 5, 2018, ECF No. 154 (stating that "Speaking Rock has received no complaints from its local district attorney" and that "Speaking Rock has received tremendous support from local leaders and the city of El Paso").

The Tribe emphasizes that this is "clearly not a small claims suit, nor is it a low value case of little importance." Pueblo Br. 3. The Court recognizes that any injunction halting gaming operations, if granted, would have a significant financial impact on the Tribe and its members. However, the distinction between law and equity focuses on the remedy sought-not on the case's importance or the possible financial impact resulting from the litigation. Cases of significant social importance do not carry any special right to a jury trial if the relief sought is purely equitable. See, e.g., Plaquemines Par. Sch. Bd. v. United States , 415 F.2d 817, 824 (5th Cir. 1969) ("There is no right to trial by jury in injunction proceedings relevant to school desegregation.").

The Tribe asserts that the key issue of fact in this case is whether the bingo activities conducted by the Tribe meet the Restoration Act's definition of a "gaming activity." Pueblo Br. 6.